**John B. CALHOUN, Plaintiff,**

v.

**Maj. Gen. G. Reid DOSTER, individually, and as Commander of the Alabama Air National Guard and as Base Detachment Commander of Sumpter Smith Air National Guard Base, Col. James E. Hardwick, individually and as Executive Officer of the 117th TAC Recon Wing, Alabama Air National Guard and as Base Detachment Commander of Dannelly Air National Guard Base, Col. Henry Fillingim, Jr., individually and as Group Commander of the 187th TAC Recon Group, Alabama Air National Guard and as Operations Supervisor of Dannelly Air National Guard Base, Lt. Col. William R. Turnipseed, individually and as Deputy Commander of Operations, 187th TAC Recon Group, Alabama Air National Guard and as Flying Training Instructor, Dannelly Air National Guard Base, Col. Alfred B. Gurley, individually and as Administrative Personnel Officer of Sumpter Smith Air National Guard Base, Col. Lawrence A. Doyle, individually and as Wing Commander of the 117th TAC Recon Wing, Alabama Air National Guard, Lt. Col. Thomas N. McElrath, individually and as Commander of 187th Camron, Alabama Air National Guard and as Chief of Maintenance, Dannelly Air National Guard Base, Defendants.**

Civ. A. No. 3260–N.

United States District Court,
M. D. Alabama, N. D.

Feb. 19, 1971.

Marlin Mooneyham and William S. Mooneyham, Montgomery, Ala., for plaintiff.

L. Drew Redden, Rogers, Howard, Redden & Mills, Birmingham, Ala., for Maj. Gen. G. Reid Doster, Col. Alfred B. Gurley and Col. Lawrence A. Doyle.

William B. Moore, Jr., Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., and Thomas R. Elliott, Jr., London, Yancey, Clark & Allen, Birmingham, Ala., for Col. James E. Hardwick, Col. Henry Fillingim, Jr., Lt. Col. William R. Turnipseed and Lt. Col. Thomas N. McElrath.

## OPINION

JOHNSON, Chief Judge.

This is a civil action seeking injunctive relief and damages against the

named defendants, prohibiting them from infringing upon the constitutional rights of the plaintiff. Jurisdiction of the Court is invoked under 28 U.S.C.A. §§ 1331 and 1343 and 42 U.S.C.A. §§ 1983 and 1985. The plaintiff, John B. Calhoun, is a Major in the Alabama Air National Guard and is employed as a Flying Training Instructor; as such, he is classified as a "technician", employed under § 709(a) of Title 32, U.S.C.A. Each of the defendants is an officer in the Alabama Air National Guard. Major General G. Reid Doster is Commander of the Alabama Air National Guard and is also Base Detachment Commander of Sumpter Smith Air National Guard Base, Birmingham, Alabama. As such, he commands the technician force at this Guard base. Colonel James E. Hardwick is the Executive Officer of the 117th TAC Recon Wing of the Alabama Air National Guard. He is also Base Detachment Commander of Dannelly Air National Guard Base, Montgomery, Alabama. Colonel Henry Fillingim, Jr., is Group Commander of the 187th TAC Recon Group. He is plaintiff's immediate superior officer and is also Operations Supervisor of Dannelly Air National Guard Base, Montgomery, Alabama. Lieutenant Colonel William R. Turnipseed is Deputy Commander of Operations of the 187th TAC Recon Group. He is also plaintiff's immediate supervisor and is a Flying Training Instructor at Dannelly Air National Guard Base, Montgomery, Alabama. Colonel Alfred B. Gurley is Administrative Personnel Officer of Sumpter Smith Air National Guard Base, Birmingham, Alabama. Colonel Lawrence A. Doyle is the 117th TAC Recon Wing Commander, with his headquarters at Sumpter Smith Air National Guard Base, Birmingham, Alabama.[1]

Upon the original filing of this action, the plaintiff sought a temporary restraining order. This Court by formal order denied the motion for a temporary restraining order and set plaintiff's motion for a preliminary injunction for a hearing. The defendants, separately and severally, move to dismiss the complaint. The matter is now submitted upon the motions to dismiss and the evidence taken in support of and in opposition to plaintiff's motion for a preliminary injunction.

I

In their motions to dismiss, the defendants contend that the plaintiff has failed to state a cause of action under 42 U.S.C.A. §§ 1983 and 1985 and that, as a result, this Court has no jurisdiction over the subject matter under 28 U.S.C.A. § 1343. The thrust of defendants' argument is that since they are federal employees they could not have acted under "color of law" as required by and as defined in § 1983 and § 1985.

Each of the defendants is employed as a "technician" with the Department of the Air Force and, as such, is an employee of the United States. 32 U.S.C.A. § 709; 1968 Cong. & Adm.News, p. 3320. At the same time, however, each of the defendants wears the hat of an officer in the Alabama Air National Guard and, as such, is a State employee. Ala.Code T. 35, § 1, et seq. Thus, only by analyzing the particular facts of this case can the Court determine whether the defendants were acting "under color of law" within the meaning of § 1983 and § 1985. Cf. Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

In 32 U.S.C.A. § 709 (Supp.1970), Congress established a class of "technicians" to assist in (1) the administration and training of the National Guard and (2) the maintenance and repair of supplies issued to the National Guard or the Armed Forces. Section 709(d) provides that "[a] technician employed under subsection (a) is a [civilian] employee of the * * * Department of

---

1. Lieutenant Colonel Thomas N. McElrath is also named as a defendant; however, for the reasons appearing in this opinion and order, McElrath is dismissed as a defendant.

the Air Force * * * and an employee of the United States." [2] Defendants, all of whom are "technicians", command or supervise various technician forces in the State of Alabama.

As a prerequisite to becoming a "technician", however, an individual must be a member of the State National Guard.[3] 32 U.S.C.A. § 709(b). If the individual's military status ceases to exist, his concurrent civilian employment as a technician is terminated. The State Adjutant General,[4] who is the commanding officer of the State National Guard, is appointed by the Governor. Officers of the State National Guard are appointed under the laws of the State. U.S.Const. Art. I, § 8, cl. 16. Thus, each of the defendants, all of whom are officers in the Alabama Air National Guard, also wears the label of "state employee".

Plaintiff is a "technician" (a Flying Training Instructor) presently assigned to Dannelly Air National Guard Base, Montgomery, Alabama. At the same time, he is and has been an officer in the Alabama Air National Guard. In theory, plaintiff is, during the week, under the supervision and authority of the defendants in their federal civilian capacities, while on those weekends when plaintiff is satisfying his military obligation he is under the supervision and authority of the defendants in their State military capacities. The Court finds the distinction between defendants' State and federal positions, however, to be blurred and artificial.

In his complaint, plaintiff alleges that:

> Sometime prior to March 16, 1970, defendants entered into a plan, scheme or conspiracy with each other whereby they would use their official capacities, as ranking officers in the Alabama Air National Guard, to solicit cash contributions from other officers in the Alabama Air National Guard, said money to be collected and given to defendant Doster to be used by him as political contributions to help finance the campaigns of both Albert Brewer and George C. Wallace.

Plaintiff further alleges that, since he refused to contribute to the campaign fund, he has been harassed and intimidated by the defendants "in such a manner as to substantially interfere with the

2. Most of the early cases dealing with the legal status of "technicians" held that they were "state" employees and that, as a result, the United States was not liable under the Federal Tort Claims Act for their negligent acts. See e. g., Maryland for Use of Levin v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965), vacated and remanded, 382 U.S. 159, 86 S.Ct. 305, 15 L.Ed.2d 227 (1965). In 1968, Congress amended 32 U.S.C.A. § 709 by authorizing federal employee status for "technicians" in order to:
   "(a) [P]rovide a retirement and fringe benefit program which will be both uniform and adequate;
   "(b) [R]ecognize the military requirements and the State characteristics of the National Guard by providing for certain statutory administrative authority at the State level with respect to the technician program;
   "(c) [C]larify the technician's legal status which in certain areas has been the subject of conflicting court decisions, especially on the matter of whether technicians are covered under the Federal Tort Claims Act regarding

third party actions against the U.S. Government." 1968 Cong. & Adm.News, p. 3319.
From the above, it appears clear that Congress intended neither to construct a shield to protect technicians from their wrongful acts nor to eliminate the "state" aspects of the "technician" position.

3. While there are minor exceptions to this requirement, none of them has any bearing on the issues presently before the Court.

4. The State Adjutant General also has significant authority over his military personnel in their civilian capacity as technicians, i. e., he is authorized by statute to employ and administer the technician force in his State. 32 U.S.C.A. § 709(c). "This requirement is intended to achieve two purposes: (a) recognize the State character of the Guard and (b) meet the requirement of giving the adjutants-general (who are State officers) the statutory function of employing federal employees." 1968 Cong. & Adm. News, p. 3330.

performance of his official duties in the Alabama Air National Guard. * * *"

Taking as true the allegations set forth in plaintiff's complaint, as this Court must do upon a motion to dismiss, the Court is of the opinion that defendants' military authority over the plaintiff is so inextricably intertwined with their civilian authority over him as to render any distinction between "federal" and "state" one of form, not substance. While, in theory, defendant Doster has no authority over the plaintiff in his capacity as a "civilian" technician, it appears from the complaint that this defendant, as a result of his military position as Commander of the Alabama Air National Guard, exercises significant control and authority over plaintiff and his "civilian" supervisors.[5] Furthermore, plaintiff's "civilian" supervisors are also his superior officers in the Alabama Air National Guard.[6] Having "sifted and weighed" the particular facts of this case, the Court concludes that defendants' conduct, as alleged in plaintiff's complaint, constitutes "state action" under "color of law" within the meaning of 42 U.S.C.A. §§ 1983 and 1985.

■ Defendants also contend that plaintiff has failed to exhaust his administrative remedies as set forth in 32 U.S.C.A. § 709(e) and its implementing regulations. Such contention is without merit. A number of Supreme Court decisions have clearly held that a plaintiff bringing a § 1983 action need not exhaust his state remedies before seeking redress in the federal courts. Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) (per curiam); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) (per curiam); McNeese v. Board of Education, 373 U. S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).[7]

## II

The evidence submitted upon the motion for a preliminary injunction reflects that sometime prior to March 16, 1970, the defendants entered into a plan with each other whereby they would use their official capacities as ranking officers in the Alabama Air National Guard to solicit cash contributions from other officers in the Alabama Air National Guard; this money was to be collected and given to the defendant Doster to be used by him as a political contribution to help finance the campaign of either Albert P. Brewer or George C. Wallace, or both of them. Albert P. Brewer was at that time Governor of the State of Alabama and a candidate for reelection as such; George C. Wallace was a candidate for Governor of the State of Alabama. Said solicitations were in violation of federal statutes prohibiting certain political activities in the National Guard. Title 5, §§ 7321–7327; Title 18, §§ 602, 603, 607, 608, United States Code.[8]

On March 16, 1970, General Doster called a meeting of certain of the officer-technicians in the Operations Section of the Air National Guard Base in Bir-

---

5. It is important to note, moreover, that plaintiff's civilian status as a technician is dependent upon his continued membership in the Alabama Air National Guard.

6. Plaintiff's immediate "civilian" supervisors, for example, are defendant Fillingim, who is Group Commander of the 187th TAC Recon Group, and defendant Turnipseed, who is Deputy Commander of Operations, 187th TAC Recon Group.

7. The Fifth Circuit has recently held that the pronouncements made by the Supreme Court in the aforementioned cases "were [not] meant to be limited to any particular type of § 1983 case." Hall v. Garson, 430 F.2d 430, 436 (5th Cir. 1970).

8. In making these findings and conclusions this Court completely credits the testimony of Major William Beddow, Jr., Major James D. Logan, Lieutenant Colonel Henry Bruce Cyr, and the plaintiff, Major John B. Calhoun.

mingham, Alabama. This meeting was attended by Major William Beddow, Jr., and Lieutenant Colonel Joseph L. Shannon. General Doster stated: "Gents, it's illegal as hell, but I've got to do it anyway; I've got to have a hundred-dollar political contribution from each of you." Lieutenant Colonel Shannon inquired, "Who is it for?" General Doster replied, "None of your God-damned business!" On the same day, Colonel Gurley solicited from Major James D. Logan in the Birmingham Guard headquarters $100 to be used by General Doster as a political contribution in the Governor's race in such a manner as would benefit the Alabama Air National Guard.

On the same day, March 16, 1970, Colonel Henry Fillingim called a meeting of all the officer-technicians in the Operations Section of the Dannelly Air National Guard Base, Montgomery, Alabama. This meeting was attended by plaintiff Calhoun, 1st Lieutenant Eugene Beasley, Major Ted Tyus, Lieutenant Colonel Henry Bruce Cyr and other Guard technicians. At this meeting, Colonel Fillingim advised the officers present that each of them would be expected to contribute $100 in cash, which money was to be used for the "good of the Alabama Air National Guard." These officers were advised by Colonel Fillingim that General Doster would "put the money" where it would be of the most benefit to the Guard. All the officers solicited at the Montgomery base contributed the $100 in cash except Major Calhoun. Immediately after Major Calhoun failed to make his contribution, he was subjected to some minor harassment and personal abuse by his superior officers at the Montgomery installation. However, on or about May 25, 1970, the reprisals took on a more substantial form. Calhoun, who had been Safety Officer at the Montgomery installation for several years, was re-lieved as Safety Officer without any prior notice and transferred to the position of Flying Training Instructor. This transfer was without any loss in grade or salary and was possibly good for the organization; however, the inference is clear that this reassignment was to a position that Calhoun did not seek and did not want and was made primarily for the purpose of imposing punitive action on him because of his failure to make the contribution requested by his superior officers. The reprisals against Calhoun continued to become more aggravated, causing him finally to report the matter to General Alfred C. Harrison, who was at that time the Adjutant General for the State of Alabama and as such, insofar as Alabama National Guard activities were concerned, was superior in rank to General Doster and the other defendants. Shortly thereafter, a conference was arranged whereby Major Calhoun, Lieutenant Colonel Shannon, Major Beddow, Major Logan and General Harrison would report the entire matter to Governor Brewer. This meeting occurred on or about September 1, 1970. The matter of the solicitation became generally known shortly after this, and some newspaper publicity was given to the solicitation in the Montgomery and Birmingham areas.[9]

Almost immediately, the abuse, the harassment, the attempted intimidation of and the reprisals against Calhoun further increased in severity. Each of the defendants, with the exception of McElrath, was an active participant in these abusive and harassing activities. The situation mushroomed to the point that shortly after the meeting with the Governor, General Doster summoned Major Beddow to his office at the Birmingham installation and stated, "You realize you have a cocked pistol pointed at your head, don't you? I will kill to protect my son, and this is hurting him in his career." Doster also stated, con-

---

9. Calhoun was rather vocal in his criticism of this solicitation and, in all probability, exercised bad judgment in discuss-ing the action of his superior officers with other officers and enlisted men in his unit.

cerning Major Calhoun, "I've tried to get Major Calhoun but he has a protective umbrella that I cannot penetrate at this time;' when the administration changes, I will get to him." Doster also promised Major Beddow that if Beddow would support him in the matter he would promote him to Lieutenant Colonel and make him a squadron commander.

During the first week of October, 1970, General Doster approached Major Logan and advised him that he needed a strong Safety Officer in the Montgomery installation. At one point during the conversation, General Doster was called to the telephone. Major Logan testified that he heard General Doster say (in all probability to Colonel James Hardwick of the Montgomery installation): "I'm going to bring that little bastard [meaning Calhoun] up here to Birmingham so I can get rid of him." In another conversation, General Doster advised Lieutenant Beasley, sometime in September or the early part of October, 1970, that Calhoun would be gone from the Guard within 90 days. During this same period, General Doster asked Lieutenant Colonel Cyr, "If I make you Group Commander, will you have the guts to get rid of Major Calhoun?" During this conversation, the defendants Hardwick and Doyle were present. Hardwick later advised Colonel Cyr that he did not give General Doster an emphatic enough answer.

After the visit to the Governor and after the defendants had received knowledge that Calhoun had discussed the solicitation matter with the Federal Bureau of Investigation, the reprisals became even more serious in nature. Cross-country flights are the preferred and choice method of technicians for getting in flying time. In fact, these cross-country flights are almost essential in order for a National Guard technician such as Calhoun to get in the required flying time without undue infringement upon his duty performance or off duty time. Prior to September, Calhoun was allowed to take cross-country flights in the same manner as the other technicians in the Montgomery and Birmingham branches. Since the meeting with General Harrison and Governor Brewer, Calhoun's superior officers in the Montgomery installation have consistently refused to allow him to take cross-country flights. Colonels Fillingim and Turnipseed have refused to approve any of these cross-country flights, and have stated that their reason for doing so is Calhoun's criticism of the solicitation and his disclosure of the solicitation to General Harrison, the Governor and the Federal Bureau of Investigation.

Mobile duty is required of technicians in the Montgomery Guard installation. This mobile duty is an isolated type of duty and is considered by all to be a rather distasteful function required of the technician-officers. Until September, the mobile duty was equitably rotated among the eligible officers. Since September, Calhoun's superior officers have given him more than his share of this mobile duty. It has now reached the point that Calhoun is on almost continuous mobile duty.

A transition school to allow Guard officers to learn to operate the new RF4 plane was inaugurated in the fall of 1970. It was the objective of the Guard to get as many of its officer-technicians in this transition school as possible. The evidence reflects that Calhoun normally would have been assigned to this transition school; however, he was not, and he was advised by Colonel Fillingim that he would not be so assigned since he would not be working with the Guard that long.

In November of 1970, the reprisals took on an even more serious form when Calhoun's superior officers at the Montgomery installation gave him an Efficiency Report rating substantially below the ratings which he had been receiving ever since he had been an officer-technician in the Guard. There is no explanation for this poor efficiency rating except that it is part of the reprisal action being taken by his superior officers for his refusal to contribute to the Gover-

nor's race and for his disclosure to other public officials of the actions of his superiors in this illegal solicitation. As a matter of fact, when General Doster was called by the plaintiff as an adverse witness, he testified that the only specific complaint he knew of against Calhoun was that Calhoun had failed to follow the chain of command in making his grievances known. He mentioned only Calhoun's visits to General Harrison and Governor Brewer. When Colonel Fillingim was called as an adverse witness, he testified that he did not know of anything that Major Calhoun had been guilty of that would constitute any basis for any disciplinary action against him, either in the military or civilian sense.

Some of the reprisals have been in the form of rather infantile or picayunish action on the part of the defendants. For instance, Calhoun is now required to bring a doctor's report each time he is on sick leave—even for one hour; this special condition is not imposed on any other technician-officers; he is required to leave the door to his office open at all times; his use of the telephone for Boy Scout and Y.M.C.A. work has been restricted, even though prior to September 1, 1970, it was considered by his superior officers as being so worthy of praise that they mentioned it on his efficiency reports.

■ This Court now concludes that the harassment, abuse, coercion, attempted intimidation and reprisals used by the defendants on Calhoun have been designed to punish Calhoun and are designed to terminate Calhoun's service as Major in the Guard and his employment as a technician. The defendants in doing so have acted under color of State law and have used their official positions as officers in the Alabama Air National Guard to accomplish these illegal purposes. These illegal purposes are designed to attempt to deprive Major Calhoun of his employment and livelihood and are violative of his constitutional rights.

■ The law is quite clear in this circuit that an individual, in assuming public employment, retains all the rights and protections otherwise afforded him by the United States Constitution. Orr v. Thorpe, 427 F.2d 1129 (5th Cir. 1970); Pred v. Board of Public Instruction, 415 F.2d 851 (5th Cir. 1969). One of these constitutionally protected rights is that of the individual to be free from arbitrary and unreasonable conduct on the part of the government. "[T]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967); see Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966), cert. denied, 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967). "To state that a person does not have a constitutional right to government employment is only to say that he must comply with reasonable, lawful, and non-discriminatory terms laid down by the proper authorities." Slochower v. Board of Higher Education, 350 U.S. 551, 555, 76 S.Ct. 637, 639–640, 100 L.Ed. 692 (1956); see Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L. Ed. 216 (1952). The Court concludes, therefore, that defendants' conduct, done "under color of law", was so arbitrary and unreasonable as to deny plaintiff his constitutional rights under the Fourteenth Amendment. Keyishian v. Board of Regents, supra; McConnell v. Anderson, 316 F.Supp. 809 (D.Minn.1970); Lafferty v. Carter, 310 F.Supp. 465 (W. D.Wis.1970).

A preliminary injunction will be issued restraining the defendants from discharging, dismissing, harassing, coercing, intimidating or threatening Major John B. Calhoun in his capacity as an officer in the Alabama Air National Guard or in his capacity as a technician with the Alabama Air Na-

tional Guard on account of his refusal to make a monetary contribution in response to the solicitation of March 16, 1970, or on account of his reporting the solicitation to General Harrison, Governor Brewer, the Federal Bureau of Investigation, or to the news media.

The evidence does not show that the defendant Lieutenant Colonel Thomas N. McElrath engaged in or participated in any of the illegal activities described above. Therefore, he will be dismissed as a party defendant. The injunction to be issued will, however, apply to him as an agent of the other defendants.

### DECREE

Pursuant to the findings of fact and conclusions of law entered this date, it is ordered, adjudged and decreed that the defendants, Major General G. Reid Doster, individually and as Commander of the Alabama Air National Guard and as Base Detachment Commander of Sumpter Smith Air National Guard Base; Colonel James E. Hardwick, individually and as Executive Officer of the 117th TAC Recon Wing, Alabama Air National Guard and as Base Detachment Commander of Dannelly Air National Guard Base; Colonel Henry Fillingim, Jr., individually and as Group Commander of the 187th TAC Recon Group, Alabama Air National Guard and as Operations Supervisor of Dannelly Air National Guard Base; Lieutenant Colonel William R. Turnipseed, individually and as Deputy Commander of Operations, 187th TAC Recon Group, Alabama Air National Guard and as Flying Training Instructor, Dannelly Air National Guard Base; Colonel Alfred B. Gurley, individually and as Administrative Personnel Officer of Sumpter Smith Air National Guard Base; and Colonel Lawrence A. Doyle, individually and as Wing Commander of the 117th TAC Recon Wing, Alabama Air National Guard, their agents, officers, employees, successors in office and all persons in active concert with them, be and each is hereby enjoined from engaging in any act or practice which is designed to abuse, harass, coerce, intimidate, threaten, impede or punish Major John B. Calhoun on account of Major Calhoun's refusal to make a monetary contribution in response to the political solicitation of March 16, 1970, or on account of his reporting the solicitation to General Alfred C. Harrison, Governor Albert P. Brewer, the Federal Bureau of Investigation, or the news media.

It is further ordered that the defendants be and each of them is hereby enjoined from taking any disciplinary action against Major John B. Calhoun that is designed to affect his military or civilian status adversely, or that is designed to impose any other punitive type action on Major Calhoun, including but not restricted to denying him cross-country flights and admission to the RF4 transition school, or imposing any punitive action on him, such as an undue amount of mobile duty, by reason of his refusal to make a monetary contribution in response to the political solicitation of March 16, 1970, or by reason of his reporting said solicitation to General Harrison, Governor Brewer, the Federal Bureau of Investigation, or the news media.

It is further ordered that this cause be and it is hereby dismissed as to Lieutenant Colonel Thomas N. McElrath, individually and as Commander of the 187th Camron, Alabama Air National Guard, and as Chief of Maintenance, Dannelly Air National Guard Base, Montgomery, Alabama. However, this dismissal does not remove Colonel McElrath from the prohibition of the injunction herein issued as an agent, an officer, or an employee of, or as one acting in active concert with, the other defendants.

The costs incurred in this proceeding up to this date are ordered to be and they are hereby taxed against the defendants herein enjoined.

This Court retains jurisdiction of this cause as to all matters.