**Billy Don DUNLAP**

v.

**Colonel Robert W. AKIN et al.**

**Civ. No. 3–74–15.**

United States District Court,
E. D. Tennessee, N. D.

March 13, 1974.

William Terry Denton, Maryville, Tenn., for plaintiff.

Alex B. Shipley, Jr., Nashville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action is presently before the Court on defendant's motion to dismiss or, alternatively, motion for summary judgment.

Plaintiff's action arises under 42 U.S. C. § 1983 et seq.; jurisdiction accordingly lies under 28 U.S.C. § 1343.

In his complaint, plaintiff asserts that he was enlisted in the Tennessee Air National Guard, 134th Air Refueling, as an Air Guard technician from August 13, 1967 through January 12, 1973. Plaintiff's term of enlistment with the Air National Guard expired on December 8, 1972. Plaintiff was informed by a Colonel Robert W. Akin, Commander of the 134th Air Refueling Group of the Tennessee National Guard, prior to plaintiff's effective termination date that, in exercising his discretion, he had

concluded that it was not in the best interest of the Guard to grant plaintiff's reenlistment. Thereafter, a board of officers was convened by Colonel Akin to further advise him whether plaintiff should be permitted to reenlist. Plaintiff's request to appear before this advisory board was denied. The board, in concurring in Colonel Akin's conclusion, recommended that plaintiff not be permitted to reenlist. Plaintiff presently contends that he has never received a copy of any of the charges offered against him or any formal declaration from the advisory board advising him why his continued employment with the unit was not in the Guard's best interest.

Pursuant to the recommendation of the board, and the opinion of Colonel Akin, plaintiff received an order on December 8, 1972, discharging him from the Tennessee Air National Guard and as a Reserve of the Air Force. The reason given in the order for such termination was the expiration of plaintiff's term of enlistment.

Shortly thereafter, on December 13, 1972, plaintiff received a letter from Colonel Akin, notifying him that his employment as a technician would be terminated, effective 30 days from the date of receipt of said letter, due to his loss of membership in the Tennessee Air National Guard. This action was taken pursuant to the statutory directive of 32 U.S.C. § 709(e)(1) (Supp.1973), which provides, in part:

"709(e)(1) * * *

"... [A] technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned." [1]

Pursuant to Section 709(e)(3) (Supp.1973), plaintiff filed "on or about the 22nd day of January, 1973," an appeal with the state adjutant general. [2]

Although plaintiff has not stated what appellate disposition was taken by the adjutant general, it is presumed that an adverse decision was rendered, affirming the action taken by Colonel Akin in denying plaintiff's reenlistment.

Plaintiff's sole allegation is that the discretion vested in the commanding officer to deny reenlistment is necessarily exercised in an arbitrary and capricious manner since such discretion is not couched in sufficiently descriptive standards. Thus, in absence of any definitive

---

1. Defendants have responded that the joinder of appropriate federal officials is required as plaintiff's action necessarily addresses itself to Section 709 et seq. Plaintiff, however, fails to attack the validity of Section 709 but instead attacks only the discretion or perogative allegedly vested in a commander to decide whether it is in the best interest of the Air National Guard to allow a member to reenlist. Plaintiff's complaint is thus directed only to acts of a member of a state militia, not a federal official.

The employment status of a technician with the Guard is an admixture of federal and state characteristics. See generally, Calhoun v. Doster, 324 F.Supp. 736 (M.D. Ala.1971). Principally, however, the congressional intent was to vest in the State Adjutant General the authority to employ and terminate the services of technicians. 32 U.S.C. § 709(c). Thus, the operative focus of the personnel relationship is between the state and the enlisted man. This congressional intent was reiterated in *Calhoun*, 324 F.Supp. at 739, n. 4:

"This requirement [Section 709(c)—'adjutant generals ... to employ and administer the technicians'] is intended to achieve two purposes: (a) recognize the State character of the Guard and (b) meet the requirement of giving the adjutant-generals (who are State officers) the statutory function of employing federal employees." 1968 Code Cong. and Admin.News, p. 3330.

For additional discussion of the state's role, see Anselmo v. Ailes, 235 F.Supp. 203 (D.C.N.Y.1964), aff'd 344 F.2d 607 (2nd Cir. 1965).

2. 32 U.S.C. § 709(e)(5) (Supp.1973) provides:

"(5) A right to appeal which may exist with respect to clause (1), (2), (3), or (4) shall not extend beyond the adjutant general of the jurisdiction concerned."

guidelines to follow in denying an applicant the opportunity to reenlist, the commanding officer's decision is necessarily arbitrary and capricious.

Although plaintiff requests a jury trial in this action, at this stage in the proceeding it appears that the preliminary question is one of law alone: Can the Court review the actions of a commanding officer of a state militia in denying a currently enlisted technician his request for reenlistment?

Having examined the law and the facts, it is the considered opinion of the Court that, under the circumstances described here, the actions of Colonel Akin and the advisory board and the subsequent appeal to the adjutant general are not subject to review by a civil court.

Tennessee Code Annotated, Title 7, Section 105 (1973) recognizes that "[t]he governor of this state shall be the commander-in-chief of the military forces," and, in addition to his enumerated powers, *Id.* § 105(a)–(e), is granted "further and general powers . . . as may be necessary."

Likewise, the Air National Guard Regulation 39–10, ¶ 4, provides:

> "4. *Separation Authority.* The authority to separate members from the Air National Guard rests with the State. The authority to separate members from their Reserve of the Air Force enlistments rests with the Secretary of the Air Force, and is delegated to the State adjutant general, as indicated in this regulation, with authority to the commanders of wings, separate groups, or separate squadrons."

Although the Court is not readily aided in its disposition by a plethora of case law, it is guided by traditional principles that govern the civil review of military proceedings. As plaintiff notes, Baum v. Zuckert, 342 F.2d 145 (6th Cir. 1955), is not factually analogous to the case at bar since in that case the plaintiff was dismissed from active service in the Air Force "for reasons within his control," and the Court in that instance was reviewing personnel action of the Civil Service Commission. Accordingly, the scope of review for the district court was drawn in sharper focus than the review presently before this Court. *Baum* does evidence, however, the judiciary's historical reluctance to review administrative actions of the military. This principle of judicial discretion should find no less support where the district court is reviewing the administrative proceedings of a state, rather than a federal, militia. Additionally, it should be noted that in *Baum*, plaintiff's employment was terminated as a result of his reassignment to inactive duty. Here, however, plaintiff was not discharged prior to the end of his enlistment, but merely was denied permission to reenlist. The distinction appears to be more than merely formal, as the scope of review of a discharge of an enlisted man prior to the expiration of his term of enlistment "without honor" would indeed be different from the more routine discharge and denial of reenlistment at the expiration of his term. Since civil review has not been recognized in the former instance, it is difficult to understand effecting such review in the latter instance. See, e. g., Boling v. Rockefeller, 52 Misc.2d 745, 277 N.Y. S.2d 168 (1967). Contrary to the distinction drawn by plaintiff, the discharge or reassignment premised upon misconduct on the part of the enlisted man, such as in the *Baum* case, provides the basis for a potentially stronger appeal to the civil courts.[3]

---

3. In a similar vein, the courts have been restricted to a narrow scope of review in examining disciplinary actions of unit commanders resulting in assignment to active duty in the armed forces. See generally, Gianatasio v. Whyte, 426 F.2d 908 (2nd Cir. 1970) ; Jolicoeur v. Laird, 344 F.Supp. 1125 (D.C.Minn.), aff'd 462 F.2d 1234 (8th Cir. 1971) ; Comunale v. Mier, 355 F.Supp. 429 (D.C.Pa.1973).

Historically, the relationship between a sovereign and the enlisted man serving in a militia, when couched in terms of either an implied or express contract for the purposes of judicial perspective, is unlike that of his civilian counterpart, notwithstanding statutory provisions. Accordingly, though set forth in a federal posture, it has been articulated in Reid v. United States, 161 F. 469, 472 (S.D.N.Y.1908):

> "The exact method of this soldier's discharge and the quantum or kind of character that should be given him, not being regulated by statute, must necessarily be left in the discretion of the executive officer having power to grant some type of discharge. That it is beyond the power of the judicial branch to coerce or review the discretion of the executive is familiar doctrine."[4]

Again, it is of significance to note that *Reid* addresses itself to the nature of the executive's discretion in discharging the enlisted man prior to the end of re-enlistment.

More recently, the Supreme Court tempered the role of the federal court in reviewing administrative proceedings in the United States Army:

> "We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army . . . Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters . . . " Orloff v. Willoughby, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953)

As noted above, this principle has found similar application in judicial review of state militia proceedings, since its policy basis is equally controlling on the state level.[5]

Finally, this Court has examined the Supreme Court's recent rulings in Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 626 (1972) and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), for possible application. Any application of those cases is negated by the unique relationship between the state militia and the enlisted man[6] and the fact that generally *Roth* and *Sindermann* have been restricted in application to the university community.

In conclusion, it is the considered opinion of the Court that it is without the power to review the denial of plaintiff's request for reenlistment in the Tennessee Air National Guard, in the absence of extraordinary circumstances.

Accordingly, it is ordered that defendant's motion be, and the same hereby is, granted.

---

4. The roots of this doctrine are deep and find their basis in the relation of the British crown to its soldiers. In re Tuffnell, L.R. 3 Ch.Div. 173; see also United States v. Cottingham, 1 Rob. 615 (Va.) 629; United States v. Blakeney, 3 Gratt. 405 (Va.) 405;

In re Morrissey, 137 U.S. 157, 11 S.Ct. 57, 34 L.Ed. 644 (1890).

5. See note 3, *supra.*

6. See e. g., Washington State Nat. Guard v. Washington State Personnel Bd., 379 P.2d 1002, 61 Wash.2d 708 (1963).