Jerry L. ROWE

v.

STATE OF TENNESSEE et al.

Civ. No. 3–76–120.

United States District Court,
E. D. Tennessee, N. D.

March 8, 1977.

William Terry Denton, Maryville, Tenn., for plaintiff.

Jack E. Seaman, Nashville, Tenn., Robert E. Simpson, Asst. U.S. Atty., John W. Wheeler, Knoxville, Tenn., Rom L. Meares, Joe H. Nicholson, David T. Black, Maryville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff, Jerry Rowe, brought this action against fourteen defendants for wrongs that allegedly were committed against him "under color of state law" while he was employed as a civilian federal technician pursuant to the National Guard Technicians Act, 32 U.S.C. § 709. The complaint is based upon alleged violations of 42 U.S.C. §§ 1983, 1985(3), the Privacy Act of 1974, 5 U.S.C. § 552a, and Executive Order 11491, as amended, Executive Orders 11616, 11636 and 11838.

By a previous Order, the Court sustained Governor Ray Blanton's motion to dismiss on the ground that it was not alleged that he personally violated plaintiff's civil rights and the motions to dismiss of defendants, State of Tennessee, the Tennessee Air National Guard, and the 134th Air Refueling Group of the Tennessee Air National Guard, on the ground that they were not "persons" within the meaning of the Civil Rights Act. Plaintiff's claims under Sections 1985 and 1986 were also dismissed because the complaint failed to allege an actionable conspiracy to deprive plaintiff of his civil rights.[1]

The remaining defendants contend that plaintiff's claim under Section 1983 should be dismissed because they are federal employees and were acting under color of federal law at the time they allegedly committed the acts forming the basis of the complaint. They further contend that they are not personally liable under the Privacy Act of 1974, and that plaintiff has failed to state a claim for relief under Executive Order 11491. Additional grounds for dismissing the complaint have been alleged, but in view of the Court's holding it will not be necessary to address them.

The original complaint contained lengthy, imprecise and conclusory allegations that left considerable doubt as to the nature of plaintiff's theory of recovery. The Court requested that plaintiff consider filing an amended complaint that complied with Rule 8(a) of the Federal Rules of Civil Procedure. Since that time, an amended complaint has been filed, and plaintiff has answered interrogatories propounded by defendants and written questions presented by the Court which were aimed at clarifying plaintiff's theory of recovery. The record now is in sufficient shape for the Court to pass on the issues raised by defendants.

### Civil Rights Jurisdiction

The first issue presented is whether the amended complaint adequately alleges that defendants deprived plaintiff of his civil rights while acting "under color of state law." Deprivations of civil rights occurring "under color of federal law" are not actionable under Section 1983. *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

---

1. Although Section 1985(3) applies to private conspiracies it was not intended "to apply to all tortious conspiratorial interference with the rights of others." *Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Before a complaint states a cause of action under Section 1985(3), it must allege that there was "some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798. *See Ohio Inns, Inc. v. Nye,* 542 F.2d 673 (6th Cir. 1976); *Timson v.*

*Wright,* 532 F.2d 552 (6th Cir. 1976); *Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir. 1975); *Denman v. Leedy,* 479 F.2d 1097 (6th Cir. 1973); *Cameron v. Brock,* 473 F.2d 608 (6th Cir. 1973); *Crabtree v. Brennan,* 466 F.2d 480 (6th Cir. 1972). There is no claim of class animosity in the present case. Absent a cause of action under Section 1985(3), there is no cause of action under Section 1986. *Hahn v. Sargent,* 388 F.Supp. 455 (D.Mass.) aff'd, 523 F.2d 461 (1st Cir. 1975).

The construction that has traditionally been placed upon the phrase "under color of state law" for the purposes of the Civil Rights Act was enunciated by the Supreme Court in *United State v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941):

> "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of the state, is action taken 'under color of' state law."

This definition was reaffirmed by the Court in *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), and *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1965). Thus, we must examine the record to determine if it is contended that any of the defendants misused authority which they possessed by virtue of and made possible only because of state law to deprive plaintiff of his civil rights. For this purpose only, we accept the allegations of plaintiff as true.

As will be discussed more fully herein, plaintiff was employed as a civilian technician pursuant to the National Guard Technicians Act until he was terminated from that employment in April 1976, through a reduction in force. All but two of the defendants were employed during the times in question as civilian technicians under the Act. The thrust of the complaint is that the defendants individually and collectively abused, harassed, and intimidated plaintiff in his employment as a civilian technician, and through such acts, purposefully caused him to be separated from his civilian employment "under the guise of a reduction in force." In order to determine whether the alleged wrongs were committed under color of state law, it is necessary to consider the status conferred upon the parties by the National Guard Technicians Act and the capacities in which they were acting when the alleged wrongs occurred.

The National Guard Technicians Act was enacted by Congress in 1968 to accomplish three objectives:

> "(a) To provide retirement and fringe benefit program which will be both uniform and adequate;

> "(b) To recognize the military requirements and the State characteristics of the National Guard by providing for certain statutory administrative authority at the State level with respect to the technician program;

> "(c) To clarify the technician's legal status which in certain areas has been the subject of conflicting court decisions, especially on the matter of whether technicians are covered under the Federal Tort Claims Act regarding third party actions against the U. S. Government." 1968 U.S.Code Cong. & Admin.News, p. 3319.

The Act provides, among other things, that civilian technicians are federal employees, although they are generally required to be military members of a State National Guard unit as a condition of their civilian employment. 32 U.S.C. § 709(b). Their salaries are paid by the Federal Government and they are insured under the Federal Employees Compensation Act. 1968 U.S. Code Cong. & Admin.News, p. 3322. In short, they are employed by the Federal Government as civilian technicians during the week to maintain and care for National Guard equipment, and they are members of the State National Guard who drill and work for the State on weekends.

■ Recognizing the state characteristics of the National Guard, the Act provides that the Secretary of the Army or Air Force shall designate the adjutants general of the various States to employ and administer the technician program. 32 U.S.C. § 709(c). This provision was intended to give the adjutants general, who are state employees, the federal statutory function of employing federal employees. 1968 U.S. Code Cong. & Admin.News, p. 3330. The supervisory authority conferred upon adjutants general by federal law includes, among other things, the authority to effect reductions in force. 32 U.S.C. § 709(e)(4). An appeal from such action, by the express terms of the statute, does not extend beyond the adjutant general of the jurisdiction concerned. 709(e)(5).

■ Of particular importance to the present case is the portion of the Act which unequivocally provides that civilian technicians are federal employees:

"A technician employed under subsection [32 U.S.C. § 709(a)] is an employee of the Department of the . . . Air Force . . . and an employee of the United States. However, a position authorized by this section is outside the competitive service if the technician employed therein is required under subsection (b) to be a member of the National Guard." 32 U.S.C. § 709(d).

This section was clearly intended by Congress to clarify the status of National Guard Technicians in situations in which they are named as defendants in civil suits for acts committed during the course of their employment. 1968 U.S.Code Cong. & Admin.News, p. 3319.[2] Despite this provision, several courts have held that, in certain situations, a suit by a civilian technician may be brought under Section 1983.[3]

Defendant Wallace is Adjutant General of the Tennessee Air National Guard. He is not employed as a civilian technician, but, as previously indicated, he is possessed with federal authority to administer the technician program within the State of Tennessee. Defendant Wallis is the Flight Surgeon of the 134th Air Refueling Group of the Tennessee Air National Guard and is not employed as a civilian technician.

Defendants Akin, Pierce, Carter and Arr are both civilian technicians and officers in the Guard. They hold a higher military rank than plaintiff, and it appears from the complaint that they are his civilian superiors as well. As such, plaintiff contends, they exercise "dual control" over him.

Defendants Gambill, Livesay and Helton are noncommissioned officers in the Guard, as is plaintiff, and they are civilian technicians who "have [had] a certain amount of limited association with plaintiff" in their capacity as technicians. It is not contended that these defendants possessed any direct civilian supervisory authority over plaintiff, although it does appear that defendant Gambill may hold a higher position as a technician than plaintiff. Defendant Jones is the Civilian Technician Personnel Officer.

Plaintiff's theory of recovery, as it has been disclosed in the amended complaint, discovery materials and briefs, may be summarized as follows. Plaintiff contends that in September 1972, he was switched from his civilian job in "Stan/Eval" to another civilian technician job at the Air Base. This job transfer was precipitated, according to plaintiff, by false statements made about his job performance by Livesay and Gambill. Plaintiff filed a grievance under the collective bargaining agreement then existing between the civilian technicians[4] and their employer in an effort to have his old job restored. Although plaintiff has not clarified this point, the grievance appears to have been resolved against him. Plaintiff contends that, in retaliation for his filing the grievance, defendant Gambill engaged

---

**2.** Before the Act was passed, the courts were in disagreement as to whether civilian technicians should be considered state or federal employees in suits brought against them for torts committed within the scope of their employment. *See, e.g., Maryland for use of Levin v. United States,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205, vacated and remanded 382 U.S. 159, 86 S.Ct. 305, 15 L.Ed.2d 227 (1965); *United States v. Holly,* 192 F.2d 221 (10th Cir. 1951).

**3.** *See Syrek v. Pennsylvania Air National Guard,* 371 F.Supp. 1349 (W.D.Pa.1974); *Calhoun v. Doster,* 324 F.Supp. 736 (M.D.Ala. 1971). *Syrek* was a class action challenging National Guard hair length regulations. In *Calhoun,* defendants abused their authority *as military officers* to solicit political campaign contributions from plaintiff and others. *Contra, Vargas v. Chardon,* 405 F.Supp. 1348 (D.P.R. 1975), in which the Court held that a State Adjutant General acted under color of federal law in discharging a civilian technician. We express no view as to whether a guardsman-technician could, under certain circumstances, allege a cause of action against his military and civilian superiors under Section 1983.

**4.** Plaintiff was a member of the National Association of Government Employees until he was declared to be a "supervisor" and therefore ineligible for union membership. Section 1 of the collective bargaining agreement provides that "supervisory employees" are not members of the collective bargaining unit.

in general work-related harassment of him. We note that retaliatory action is considered an unfair labor practice under Executive Order 11491, which governs the collective bargaining agreement, but plaintiff does not appear to have filed such a charge against Gambill.[5]

Plaintiff further contends that he was performing the work of two technicians, and that disclosure of this fact would have been embarrassing to certain defendants because federal funds had been provided for two positions. He complained about his "dual job status" to Akin and attempted to get this status documented. Although his "dual job status" was eventually documented, he contends that his efforts to achieve that goal caused defendants Akin, Arr and Gambill to question his mental and physical fitness. They arranged for Dr. Wallis, the Flight Surgeon, to conduct an examination and, pending the results of the examination, temporarily grounded him from flying.

After conducting the examination, Dr. Wallis told plaintiff that he should not continue flying, and, instead, should work as a civilian flight instructor on the flight stimulator. According to plaintiff, Wallis "coerced" him into changing jobs because of plaintiff's previous complaints about his "dual job status." This job change apparently involved a pay-cut.

Plaintiff further contends that his efforts to have his "dual job status" documented resulted in a Letter of Reprimand being issued by defendant Pierce. Defendants Livesay, Gambill and Helton are alleged to have made false and malicious statements about plaintiff's job performance; and such statements were attached to the Letter of Reprimand. Akin is alleged to have been "instrumental" in having the Letter issued. A grievance was filed concerning this matter, and the Letter of Reprimand was withdrawn and replaced by a second Letter of Reprimand. The second Letter was virtual-ly identical to the first, but it was not supplemented by the written statements of Livesay, Gambill and Helton.

Plaintiff filed a grievance of the second Letter of Reprimand. At some point in the grievance procedure, however, the collective bargaining unit withdrew its representation of plaintiff because he was deemed to be a "supervisor" and was therefore ineligible for union membership. It was later "decided," although it is not clear by whom, that plaintiff had no right to file a grievance under the negotiated procedure.

Plaintiff then filed an unfair labor practice charge against Akin and Wallace. There is no indication in the record of how this charge was resolved. Presumably, plaintiff would have so stated had it been resolved in his favor. Plaintiff contends that, as a direct result of his filing the charge, Flight Surgeon Wallis, acting in concert with Akin and Wallace, thereafter activated plaintiff into the Guard for the purpose of undergoing a psychiatric examination. Such action, according to plaintiff, was designed to enable defendants to gather examination results to use to accomplish their "malicious desire to discharge plaintiff from his technician job." The examination was apparently performed in good faith because plaintiff contends that the alleged scheme failed because the test results "were most favorable to [him]."

Finally, plaintiff asserts that, in retaliation for his actions, he was severed from his civilian employment by a reduction in force. The reduction in force was undertaken because of an "aircraft changeover," but plaintiff contends that this purpose was merely a guise for the scheme to terminate his civilian employment. A general notice of reduction in force was issued in January 1976, and plaintiff was required to compete with other civilian technicians for the remaining jobs. Pierce and Carter, it is al-

---

5. Executive Order 11491, as amended Executive Order 11838, governs labor-management relations in the Federal Service, and provides the authority for the negotiation and execution of collective bargaining agreements between unions and Federal agencies. Section 19 of Executive Order 11491 provides that it is an unfair labor practice "[to] discipline or otherwise discriminate against an employee because he has filed a complaint . . . under this Order."

leged, intentionally gave him low but satisfactory performance ratings for the purpose of placing him low in the competition. Plaintiff was terminated in April of 1976 because he received the lowest competitive rating. The reduction in force was appealed through statutory procedures and resolved against plaintiff. He is now eligible for re-employment as a technician, on a priority basis, should any positions become available.

It is plaintiff's theory that the above-enumerated actions were taken against him because he exercised his First Amendment rights. It is also claimed that such actions violated his right to due process of law, although the legal basis for this claim is less than clear because plaintiff had notice and an opportunity to be heard throughout the time period in question. It is further claimed that various defendants violated certain Tennessee Air National Guard regulations with respect to the procedures governing letters of reprimand, performance ratings, activation for psychiatric examinations and reductions in force.

Applying the construction of the phrase "under color of state law" set forth in *Classic, supra, Screws, supra,* and *Monroe, supra,* to the facts of this case, the Court is of the opinion that all defendants but Flight Surgeon Wallis were acting under color of federal rather than state law at the time of the acts in question.

■ Plaintiff contends that Adjutant General Wallace. misused his power in effecting the reduction in force and in interfering with plaintiff's right to join a labor union. Whatever power Wallace, a state-appointed officer, possessed over plaintiff as a civilian technician was possessed solely by virtue of federal law, that is, 32 U.S.C. § 709(c). If this authority was misused, it was misused under color of federal law. The charges made against defendant Jones, the Civilian Technician Personnel Officer, are very similar to those made against Wallace. We are of the opinion that he, too, as the person to whom the authority to supervise civilian technicians was delegated, was acting under color of federal law.

■ The allegations against defendants Akin, Pierce, Carter and Arr, in essence, concern actions allegedly taken by them in their capacity as technicians in response to plaintiff's conduct as a technician. The damage which plaintiff claims has resulted from such actions is essentially damage to his livelihood as a technician, as he is still a member of the Air National Guard. The relief sought, in addition to monetary damages, is the restoration of his employment as a civilian technician. The Court is of the opinion that, under these circumstances, these defendants, as federal employees, were acting under color of federal law.

■ Defendants Gambill, Livesay and Helton are charged with having made false and malicious statements about plaintiff and his job performance during the course of their limited association with him. There are also allegations that they abused, harassed and intimidated him in the course of their work as technicians. We are of the opinion that these federal employees were not acting under color of state law at the times in question.

■ Flight Surgeon Wallis is the only defendant who can fairly be said to have been acting under color of state law in his relations with plaintiff. Plaintiff contends that Wallis coerced him into leaving flying status and, acting in concert with Akin and Carter, retaliated against him by questioning his physical and mental fitness and activating him for the purpose of undergoing a psychiatric examination.

■ Despite the fact that Wallis' actions were taken under the authority of state law, we are of the opinion that it would be inappropriate for a civilian court to inquire into the motives behind a military Flight Surgeon's decision to investigate a serviceman's physical and mental fitness to pilot an airplane. *State of Tennessee v. Dunlap,* 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976); *Reaves v. Ainsworth,* 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911). Courts should not interfere with internal affairs of the military, partic-

ularly in areas involving military expertise and judgment.

In summary, other than plaintiff's claims under the Privacy Act and Executive Order 11491, which will be discussed below, plaintiff relies solely upon 42 U.S.C. § 1983 to challenge defendants' actions and solely upon 28 U.S.C. § 1343(3) to invoke the jurisdiction of this Court to seek redress for those alleged actions. For the reasons stated above, plaintiff has failed to bring his contentions within the purview of those statutes.

As previously indicated, plaintiff has complained of various alleged violations of the Privacy Act by the defendants. The Privacy Act, 5 U.S.C. § 552a requires every Federal agency that maintains a system of records to publish procedures for their disclosure to private individuals. Civil remedies can be brought only against the *agency*. 5 U.S.C. § 552a(g)(1). The only penalties provided against individuals, rather than agencies, are criminal penalties. 5 U.S.C. § 552a(i)(1). The regulations promulgated by the Department of the Air Force provide for civil sanctions against the Department of the Air Force when its agents or employees violate the terms of the Privacy Act. 32 C.F.R. § 806b.6.

 The Secretary of the Department of the Air Force is thus the only proper party in a civil action by a civilian federal technician alleging violation of the Privacy Act, and the individual defendants in this action are not personally liable under the Privacy Act. Therefore, the plaintiff has failed properly to invoke the jurisdiction of this Court to seek redress for alleged Privacy Act violations.

*Executive Order 11491, As Amended*

A reading of the entire record discloses that plaintiff is contending that defendants violated Executive Order 11491 by "interfering with his right" to join the union which represents civilian technicians, and by abusing, harassing and intimidating him because he filed various grievances and an unfair labor practice charge.[6]

Executive Order 11491, as amended, Executive Orders 11616, 11636 and 11838, provides for the representation of certain governmental employees (including National Guard Technicians) by labor organizations. Labor organizations and the agency involved are required by the terms of the Order to publish policies and regulations, including policies covering the negotiation of disputes and the arbitration of grievances. Under the authority of this Order, an agreement was reached between the Adjutant General of the Tennessee Air National Guard (the employer pursuant to 32 U.S.C. § 709) and the National Association of Government Employees, Local R5–165.

Article XIII of the Collective Bargaining Agreement sets forth the grievance procedure to be followed. Five procedural steps are set forth, beginning with an informal discussion of the grievance and culminating with a Board of Review hearing. By the terms of the Agreement, Board decisions are final and binding as to all grievable matters except to the extent that they may be appealed to the Federal Labor Relations Council pursuant to Executive Order 11491, as amended.

Section 19 of Executive Order 11491 prohibits certain unfair labor practices by the governmental agency involved. The agency is prohibited from interfering with an employee's exercise of rights assured by the Executive Order and is further prohibited from encouraging or discouraging membership in a labor organization by discrimination in hiring, tenure, promotion or other conditions of employment. Section 19 further prohibits the agency from discriminating in any manner against the employee because he filed a complaint under the terms of the Executive Order.

 Unfair labor practice charges must first be filed with the Assistant Secretary of Labor for Labor-Management Relations.

6. Plaintiff has failed to allege the jurisdictional statute which he relies upon to assert his claim under Executive Order 11491.

Executive Order 11491 § 6(a)(4); § 19(d). The Secretary's decision may then be appealed to the Federal Labor Relations Council. *Id.* § 4(c).

With respect to the first alleged violation of the Executive Order, plaintiff contends that he was a member of the Collective Bargaining Unit from late 1973 through August 31, 1975, during which time union dues were deducted from his wages. Sometime in late 1975, the Collective Bargaining Unit withdrew from representing plaintiff because it was determined that he was a "supervisor" and therefore was ineligible for membership under Section 1 of the Collective Bargaining Agreement. Thereafter, "a decision" was made that he had no right to file a grievance under the negotiated procedure, and he should have filed his grievance under the state procedure. Plaintiff has not specified which individual or entity made this decision. It was later determined that the time for filing a grievance under the state procedure had expired.

 The complaint must be dismissed to the extent that it can be construed to allege that plaintiff's being declared a supervisor interfered with his right to join a union. Eligibility for union membership is controlled by the terms of the Collective Bargaining Agreement, and all disputes concerning this matter must be resolved through the procedures set forth in the Agreement and Executive Order 11491.

The complaint must also be dismissed to the extent that it alleges that defendants Akin and Wallace interfered with plaintiff's becoming a member of the union. There is no indication that plaintiff exhausted any available remedies against these defendants for their alleged interference. Interference with an employee's efforts to join a union constitutes an unfair labor practice under § 19 of Executive Order 11491. His remedy, therefore, would be to file an unfair labor practice charge with the Assistant Secretary of Labor for Labor-Management Relations. *Cf. Montana Chapter of Ass'n of Civilian Technicians, Inc. v. Young,* 514 F.2d 1165 (9th Cir. 1975).

The second violation of Executive Order 11491 alleged by plaintiff is that defendant Wallis, acting in concert with defendants Wallace and Akin and others, subjected him to various acts of harassment, abuse and intimidation because he filed grievances and an unfair labor practice charge. Any discipline or discrimination levied against plaintiff because he filed a complaint under Executive Order 11491 is specifically defined as an unfair labor practice under § 19 of the Executive Order. Again, plaintiff has not demonstrated that he fully exhausted his remedies as to these matters. Should it be determined that plaintiff was covered by the Executive Order at any of the times in question, his remedy would be to file an unfair labor practice charge under § 19. Should it be determined that he is not covered by the Executive Order, the defendants cannot be charged with a violation thereof.

For the foregoing reasons, it is ORDERED that this case be, and the same hereby is, dismissed.

Order accordingly.