[No. 36581.    En Banc.    March 28, 1963.]

WASHINGTON STATE NATIONAL GUARD (MILITARY DEPART-
MENT), *Respondent,* v. WASHINGTON STATE PERSONNEL
BOARD *et al., Appellants,* CECIL A. BECHDOLDT *et al.,*
*Intervenors.**

*Reported in 379 P. (2d) 1002.

*The Attorney General, R. Ted Bottiger* and *Charles I. McClure, Assistants,* for appellants.

*The Attorney General* and *Earl E. Yates, Assistant,* for respondent.

*William S. Howard,* for intervenors.

HILL, J.—*Quaere:* Does the Washington State Personnel Board, under the powers and authority given it by the Washington State Civil Service Law,[1] have any right of review or any control over the dismissal of Air Defense Technicians (National Guard) by reason of their status as civilian employees?

*Answer:* No.

█ *Reason:* The federal statutes[2] and regulations[3] which govern the employment of Air Defense Technicians (National Guard), the control of their activities, their transfer and dismissal are completely antithetical to the exercise of any control in those areas by the Washington State Personnel Board.

While the federal statute, which we have quoted (see note 2), refers only to "caretakers," it is conceded that this is the statutory authorization for the entire National Guard

---

[1] See addendum at end of opinion.

[2] 32 U.S.C.A. § 709(a): "Under such regulations as the Secretary of the Army may prescribe, funds allotted by him for the Army National Guard may be spent for the compensation of competent persons to care for material, armament, and equipment of the Army National Guard. Under such regulations as the Secretary of the Air Force may prescribe, funds allotted by him for the Air National Guard may be spent for the compensation of competent persons to care for material, armament, and equipment of the Air National Guard. A caretaker employed under this subsection may also perform clerical duties incidental to his employment and other duties that do not interfere with the performance of his duties as caretaker."

[3] National Guard Regulations No. 51, Headquarters, Department of the Army, Washington 25, D.C., 30 July 1961 (hereinafter cited as NGR 51).

technician program.[4] The quotations which follow are from an opinion[5] by Judge Pickett, which explains the purpose and the operation of the program. He points out that the statute (see note 2) authorizes

" . . . the employment of caretakers for the care and maintenance of materiel, animals, armament and equipment belonging to the United States and assigned to National Guard organizations. The compensation for these services is paid from funds alloted by the Secretary of the Army for the support of the National Guard under such regulations as the Secretary of the Army may prescribe. The compensation paid to caretakers who belong to the National Guard is in addition to any pay authorized for the members of the National Guard. . . ."

He further points out that the National Guard regulations (see note 3),

" . . . promulgated by the Secretary of the Army, delegate to the several Adjutants General of the States authority to employ, fix rates of pay, establish duties and to discharge caretakers subject to instructions issued by the Chief, National Guard Bureau. Travel of caretakers essential to proper performance of their official duties is authorized. Maximum pay scale is fixed by the Chief, National Guard Bureau, but the Adjutants General are authorized to fix the actual pay within that maximum. Compensation for overtime work may not be paid from Federal funds. Payment is made on standard forms provided for by the United States. The regulations provide in detail the right of caretakers to annual leave, sick leave and military leave including accumulation of annual and sick leave.

"Thus the Federal statute creates the position of unit caretaker and generally outlines the duties. The pay for these services is wholly from Federal funds. The regulations define the duties and responsibilities in detail. The maximum pay scales are fixed by the Secretary of the Army, while actual rates of pay, within the limits fixed by regulation, are established by the State Adjutant General by virtue of the delegation of that power from the Secretary of the Army. The primary duties of the caretakers are the

---

[4]NGR 51 § 1, para. 2(a).

[5]*United States v. Holly* (C.A. 10th 1951), 192 F. (2d) 221, 222-223.

care and maintenance of Federal property assigned to the National Guard for military purposes. Through the State Adjutant General, the Secretary of the Army and the Chief of the National Guard Bureau have complete control over the work of the caretaker, including his employment and discharge. The federal government maintains a reasonable measure of direction and control over the method and means of a caretaker's performing his service. . . . "

We are not citing Judge Pickett's opinion as decisive of this appeal, but for its very lucid explanation of the technician program. Indeed, the thesis of Judge Pickett's opinion—that such technicians were federal employees under the purview of the Federal Torts Claim Act (28 U.S.C.A. § 1346(b))—is probably no longer relevant, as it is clear that after the enactment (in 1960) of the National Guard Claims Act and its amendment in 1962 (32 U.S.C.A. § 715) the appropriate remedy, for a party injured by such technicians, is to file an administrative claim against the United States under that section.

The reasoning behind this recognition of the liability of the United States government for such claims is found in the legislative history of 32 U.S.C.A. § 715 (see H.R. Rep. No. 1928, 2 U.S. Code Cong. & Ad. News, pp. 3492-3499 (86th Cong. 2nd Sess. 1960)). This is basically that the work of these technicians is in the area of national defense and not for any service that the state might normally expect of its National Guard units. Paragraph 11(d) § 2, NGR 51, relating to Air Defense Technicians, reads:

"Air Defense. Air Defense Technician positions are alloted to States engaged in the Air Defense Missile Program. These technicians[6] provide a full-time cadre of command, operational and maintenance personnel necessary

---

[6]Although the record presents a very sketchy description of their duties (the Air Defense Technicians here involved), it appears that Norman A. Rustvold (2nd Lt. ARNG) was a guided missile fire control supervisor; LaVerne Buckles (CWO ARNG) a guided missile fire control assistant; John W. Miller (WO ARNG) chief guided missile fire control mechanic and guided missile material assistant; Cecil A. Bechdoldt (CWO ARNG) a guided missile material assistant; and Robert O. Ogletree, a chief fire control mechanic.

to permit missile units to participate full-time with units of the Active Army in the Air Defense of the United States."

It seems incongruous to suggest that the state can enact laws which supersede National Guard regulations that control the employment, supervision, and discharge of Air Defense Technicians.

To heighten the incongruity, we have the situation of individuals who in their admitted capacity as state employees, *i.e.*, members of the Washington State National Guard, are expressly excluded from the Washington State Civil Service Law[7] for very obvious reasons, yet seek to come under it in their status as Air Defense Technicians employed, supervised, and paid under the terms and conditions heretofore described for the purpose of taking care of and maintaining missile equipment owned by the United States. The reasons for the inapplicability of the Washington State Civil Service Law to their removal from such positions seem even more obvious.

We find no element or circumstance which takes the discharge of Air Defense Technicians from under NGR 51 and brings it within the purview of the Washington State Civil Service Law.

*Posture of the case:* Five Air Defense Technicians, employed at missile sites in the state, were discharged by the Adjutant General of the State of Washington. Concededly, no attempt was made to comply with the discharge procedure provided for in the Washington State Civil Service Law. RCW 41.06.170.

The Washington State Personnel Board, assuming that it had jurisdiction, entered orders directing the Washington State National Guard (Military Department) to reinstate each of the discharged technicians to his former position.

On the application of the Washington State National Guard (Military Department), the Superior Court of Thurs-

---

[7]RCW 41.06.070. "The provisions of this chapter *do not* apply to:

" . . .

"(11) Commissioned and enlisted personnel in the military service of the state;" (Italics ours.)

ton County, on a writ of certiorari, reviewed the action of the Washington State Personnel Board in each of the five cases and concluded that the board was without jurisdiction. The superior court annulled and set aside the orders of the board. The board appealed from the order of the superior court, and the five discharged Air Defense Technicians have intervened.

*Answer to Arguments of Appellants and Intervenors:* The contentions of the appellants and intervenors have for the most part been disposed of under "Reason" for the answer to the "Quaere."

■ The fact that these Air Defense Technicians were appointed and dismissed by the Adjutant General of the State of Washington, who is a state employee, is beside the point. In the employing and dismissing of technicians, he is acting as an agent of the federal government in a direct line of delegated authority from the Secretary of the Army. It is an authority and an agency with which the Washington State Personnel Board cannot interfere.

■ Their further contention: that since the Air Defense Technicians are covered by the state retirement program they must be state employees for all purposes, is a complete non sequitur. We have already conceded that a person may be a federal employee for one purpose and a state employee for another. The federal government, as part of the compensation for these technicians, pays the amount of the employer's contribution to the state retirement system. 32 U.S.C.A. § 709(f).[8]

On the other hand, it is not to the State Department of Labor and Industries that the technicians or their families turn for compensation for injuries or death sustained while in the performance of their duties as technicians, but to the

---

[8]"The Secretary concerned shall fix the salaries of clerks and caretakers authorized to be employed under this section, and shall designate the person to employ them. Compensation authorized under this section may include the amounts of the employer's contributions to retirement systems. Such contributions shall not exceed 6½ per centum of the compensation on which such contributions are based. As amended Sept. 13, 1961, Pub. L. 87-224, § 2, 75 Stat. 496."

federal government. 5 U.S.C.A. §§ 751 *et seq.,* NGR 51 § 1, para. 7(b).

Moreover, it is not the state but the federal government that is liable for claims for death, injury, or property loss caused by technicians while acting within the scope of their employment. 32 U.S.C.A. § 715.

Unemployment compensation for the technicians is not provided by the state but by the federal government. 42 U.S.C.A. §§ 1361 *et seq.,* NGR 51 § 1, para. 7c.

So far as the technicians are concerned, the state cannot say when employment will take place, who will be employed, or what the qualifications for employment will be. It cannot say what the salary rate will be, or what the duties and responsibilities will be. There is no "probationary period of service as provided by the rules and regulations of the board." (RCW 41.06.170(2)) Under these circumstances, we see no reasonable basis for the Washington State Personnel Board to urge that it has any jurisdiction to review the discharge of these Air Defense Technicians by the Adjutant General of the State of Washington acting as an agent for the Secretary of the Army.

*Disposition of the Appeal:* Judgment of the trial court is affirmed.

OTT, C.J., DONWORTH, WEAVER, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

FINLEY, J., did not participate.

### ADDENDUM

[1]Laws of 1961, chapter 1, now codified as RCW 41.06. The scope of authority of the Washington State Personnel Board is shown by RCW 41.06.150:

"Rules and regulations of board—Mandatory subjects. The board shall adopt and promulgate rules and regulations, consistent with the purposes and provisions of this chapter and with the best standards of personnel administration, regarding the basis for, and procedures to be followed for, the dismissal, suspension, or demotion of an employee, and appeals therefrom; certification of names for vacancies, including departmental promotions, with the number of names equal to two more names than there are vacancies to be filled, such names representing applicants rated highest on eligibility lists; examinations

for all positions in the competitive and noncompetitive service; appointments; probationary periods of six months and rejections therein; transfers; sick leaves and vacations; hours of work; layoffs when necessary and subsequent reemployment, both according to seniority; agreements between agencies and employee organizations providing for grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an agency; adoption and revision of a comprehensive classification plan for all positions in the classified service, based on investigation and analysis of the duties and responsibilities of each such position; allocation and reallocation of positions within the classification plan; adoption and revision of a state salary schedule to reflect not less than the prevailing rates in Washington state private industries and other governmental units for positions of a similar nature, such adoption and revision subject to approval by the state budget director in accordance with provisions of chapter 328, Laws of 1959 [chapter 43.88 RCW]; training programs, including in-service, promotional and supervisory; regular increment increases within the series of steps for each pay grade, based on length of service for all employees whose standards of performance are such as to permit them to retain job status in the classified service; and providing for veteran's preference as required by existing statutes. [1961 c 1 § 15.]"

RCW 41.06.170(2) deals with dismissals:

"Any employee who is reduced, dismissed, suspended or demoted, after completing his probationary period of service as provided by the rules and regulations of the board, shall have the right to appeal to the board not later than thirty days after the effective date of such action. The employee shall be furnished with specified charges in writing when the action is taken. Such appeal shall be in writing and shall be heard by the board within thirty days after its receipt. The board shall furnish the agency concerned with a copy of the appeal in advance of the hearing. [1961 c 1 § 17.]"