Anthony J. ANSELMO et al., Plaintiffs,

v.

Stephen AILES, Secretary of the Army, Department of the Army, et al., Defendants.

No. 64–C–47.

United States District Court
E. D. New York.

Oct. 20, 1964.

Samuel Resnicoff, New York City, for plaintiffs.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for defendants, Thomas J. Lilly, Asst. U. S. Atty., of counsel.

ROSLING, District Judge.

Plaintiffs' motion for summary judgment is denied; defendants' cross-motion for summary judgment is granted.

The issue presented is whether the plaintiffs, thirteen in number, were federal civil service employees at the time of their discharge from employment. If they were, then they are entitled to the reinstatement they seek in this mandamus action,[1] for in the process of their discharge they were accorded none of the procedural rights and protections enuring to employees possessed of such status.[2]

---

1. By 28 U.S.C. § 1361, added Pub.L. 87–748 § 1(a), Oct. 5, 1962, 76 Stat. 744, district courts were vested with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

2. Lloyd-LaFollette Act, 5 U.S.C. § 652, dealing with the removal of persons without pay from classified (federal) civil service, and the Veterans Preference Act, 5 U.S.C. § 851 et seq. and, particularly, § 863. Section 652 stipulates that removal be upon cause and for reasons shown in writing, upon notice thereof given and of the reasons alleged in sup-

The defendants, Cyrus R. Vance, Secretary of the Army (Secretary), Department of the Army (Department) and the Civil Service Commission (Commission) in the proceedings below and in the answer here made to the complaint have denied the federal employment alleged. Unless such relationship is found to exist the question as to whether it is subsumable as civil service is not reached. The Court's view for the reasons set forth in what follows sustains the contention advanced by defendants that the employment is not federal.[3]

The facts as to which there appears to be no controversy are generally as set forth in the following:

Of the thirteen plaintiffs nine are honorably discharged veterans who have served in the Armed Forces of the United States. With the possible exception of Price and Rosati concerning whose appointment defendants profess a lack of knowledge and information, all plaintiffs were employed at the Federal Missle Base located at Lido Beach, Long Island, New York, as civilian technicians by the New York Army National Guard.[4]

port with opportunity for answer and submission of opposing affidavits. A hearing need not be afforded, being at the discretion of the officer directing removal, but a written decision on such answer is required. Section 863, by its terms declared applicable to "permanent or indefinite preference eligible(s)," a classification which includes ex-service men and women with stipulated qualifications, establishes safeguards comparable to those granted in situations to which § 652 applies, and in addition confers a right upon the employee to answer in person and to have an adverse decision reviewed by the Commission. The status of a number of the plaintiffs as veterans thus qualified is alleged by plaintiffs and acknowledged by defendants.

3. The dismissal of plaintiffs was upon review upheld by the Regional Director, Second U. S. Civil Service Region, on the ground that they were not federal employees, a determination which was sustained upon further appeal to the Board of Appeals and Review of the Commission. The views of the Commissioners as to status are not controlling upon this Court. (cf. United States v. Missouri Pac. R. Co., 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322 [1929]; County of Marin v. United States, 356 U.S. 412, 420, 78 S.Ct. 880, 2 L.Ed.2d 879 [1958]). But inasmuch as the defendants are the government officials and agencies charged with the administration of the statutes under consideration, under the constraint of endless precedent the Court has attached great weight to the consistently given construction by these administrators, and in the absence of a clear demonstration of unreasonableness in the interpretation assigned or decision arrived at has approved the administrative action taken. United States v. Jackson, 280 U.S. 183, 193, 50 S.Ct. 143, 146, 74 L.Ed. 361 (1930); United States v. Citizens Loan

& Trust Co., 316 U.S. 209, 214, 62 S. Ct. 1026, 1029, 86 L.Ed. 1387 (1942); Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 116, 67 S.Ct. 1129, 1132, 91 L.Ed. 1375 (1947); City of Lawton, Oklahoma v. Chapman, 257 F.2d 601 (10th Cir. 1958); United States v. Short, 240 F.2d 292 (9th Cir. 1956).

An administrative regulation, not inconsistent with the controlling or contextual statute, and necessary and appropriate to carry out the statutory purpose must be given effect even though such regulation may be substantially legislative in nature. "An administrative regulation promulgated within the authority granted by statute has the force of law and will be given full effect by the courts." United States v. Short, supra, 240 F.2d at p. 298, citing National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943); Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 (1918); Ex parte Reed, 100 U.S. 13, 25 L.Ed. 538 (1879); Gratiot v. United States, 4 How. 80, 45 U.S. 80, 11 L.Ed. 884 (1846); Carter v. Forrestal, 85 U.S.App.D.C. 53, 175 F.2d 364, cert. denied, 338 U.S. 832, 70 S.Ct. 47, 94 L.Ed. 507 (1949).

4. Request for the appointment of plaintiff Anselmo is typical. The subject is stated as "Request for appointment of New York Army National Guard Technician," and signed by a "1st Lt. Msl. Bn 244th Arty NYARNG" who describes himself as "Site Supervisor Btry C 1st Msl. Bn 244th Arty". It is addressed by him to "C.O., 1st Msl. Bn 244th Arty NYARNG."

The later document with its subject stated to be "Separation of [Anselmo] New York Army Guard Technician" is similarly addressed to the "C.O." of National Guard Battalion, having been signed again as in the case of the ap-

The statutory authority for the employment of the plaintiffs is to be found in 32 U.S.C. § 709 which provides in pertinent part as follows:

"§ 709. Caretakers and clerks

"(a) Under such regulations as the Secretary of the Army may prescribe, funds allotted by him for the Army National Guard may be spent for the compensation of competent persons to care for material, armament, and equipment of the Army National Guard. * * *

* * * * * *

"(f) The Secretary concerned shall fix the salaries of clerks and caretakers authorized to be employed under this section, and shall designate the person to employ them. Compensation authorized under this section may include the amounts of the employer's contributions to retirement systems. Such contributions shall not exceed 6½ per centum of the compensation on which such contributions are based."

"Caretakers"—(the term is of historic, rather than of current significance in its description of the functions of those thus engaged)—are civilians who are employed as technicians charged with the duty of rendering care to the equipment loaned by the United States Army to the National Guard. The services performed by the plaintiffs in the subject litigation were in connection with the training activities of the National Guard at the Federal Missile Base at Lido Beach, Long Island, New York, an installation equipped to fire missiles at enemy or unknown aircraft approaching the shore lines of the United States.

Under the authority vested in him by § 709, excerpted above, the Secretary of the Army, through the Chief, National Guard Bureau, promulgated a regulation designating with qualifying language the adjutants general of the several states as the persons empowered to "employ, supervise and discharge technicians." [5]

The National Guard Technician Program (see fn. 5) is funded by federal appropriations, with both responsibility and authority for its administration committed to adjutant general of the state in respect of the National Guard in his state. In New York State the adjutant is Chief of Staff to the Governor.

Plaintiffs argue that whatever authority the adjutant exercises in this context of appointment, supervision, and discharge of the civilian personnel, is a

pointive document, by the 1st Lieutenant attached to Battery C, but here denominated its commanding officer.

5. The provision is embodied in National Guard Regulation No. 51, dated July 30, 1961, ordering the administration of the "National Guard Technician Program." Paragraph 3 of these regulations is entitled "Responsibility" and reads as follows:

"a. *State Adjutants General.* Subject to these regulations and instructions issued by the Chief, National Guard Bureau, the State Adjutants General (NGR 20–1) have responsibility for and authority to—

"(1) Employ, supervise and discharge technicians.

"(2) Determine that technicians possess the technical qualifications and ability to perform the duties prescribed in job descriptions applicable to the position for which employed or the aptitude to satisfactorily complete the training required. (Par. 5f)

"(3) Fix rates of pay within the maximum rates established, from time to time by the Chief, National Guard Bureau, assign the duties prescribed in job descriptions; and establish the work hours necessary to accomplish the workload, subject to the minimum work hours established herein. (Par. 5g)

"(4) Prescribe the uniform to be worn by technicians during work hours. (Par. 5h)

"(5) Prescribe the maximum number of hours of annual leave that may be carried forward from one leave year to the next. (Par. 19c)

"(6) Prescribe administrative absences for legal holidays, conventions and conferences, and State emergencies. (Par. 24a)

"(7) Prescribe the maximum leave that can accrue for lump sum payment upon separation. (Par. 26a)

"(8) Prescribe a per diem for travel for their State, Commonwealth of Puerto Rico or the District of Columbia. (Pars. 28a or b)"

delegated authority implemented vicariously in the right of the principal, the Secretary of the Army, and is, therefore, in law the action of the Secretary.[6] Per contra, the position of the Government is that here, as in a multitude of other federal programs, the United States participates not as the responsible superior of a person federally employed, but rather as an interested benefactor whose concern it is that the funds it provides be prudently utilized and disbursed for purposes the Congress stipulated in making the appropriation. Any participation by the United States in the state activities subvened—(here, the entities subsidized are the State of New York in its constitutional maintenance of a National Guard available for federalization if need should arise)—is, accordingly, not that of a principal, nor a fortiori that of an employer, unless the controlling statute indicates a specific legislative intent that a relationship of employer and employee be deemed established.

The position of the government in respect of the plaintiffs' claimed federal employment coincides with that which the United States Civil Service Commission announced in its rejection of plaintiffs' alleged status when they appealed their dismissal successively to the Regional Director and to the Board of Appeals and Review of the Commission.

The director's opinion ruled that "[t]he fact that these Technicians were paid by Federal funds and may have handled Federal equipment in their employment is insufficient to establish that they were Federal employees in Federal position."

The Board of Appeals and Review in affirming the director's rejection of the claim as one presented by persons lacking the prerequisite status of Federal employment, noted that they "were appointed to their positions in the Army National Guard of the State of New York and dismissed therefrom by State officers or employees. * * * National Guard Regulations No. 52, issued by Headquarters, Department of the Army, on April 15, 1961, states that all technicians of the National Guard of the several States and Puerto Rico are considered State employees." The Commission, ac-

6. In support of their position plaintiffs cite the following circumstances: Their positions were created solely by Federal Statute; their salaries are fixed solely by the Secretary who also designates the person (the adjutant general) to employ them, and are paid from federal funds; the conditions of their employment are prescribed by federal regulations; they are covered by the Federal Employees' Compensation Act; their political activities are subject to the provisions of the Hatch Act; the government has admitted its responsibility for their torts (under the Federal Tort Claims Act, Title 28, Ch. 171), and finally, the federal government has assumed the employer's obligation in their behalf to make social security contributions.

Additionally, but unpersuasively, plaintiffs cite the holding by the New York State Supreme Court, affirmed on appeal, in their proceeding which sought an order directing their reinstatement upon the ground that removal from their positions as New York State employees protected by the Civil Service Law of the State was improper (Application of Anselmo v. Rockefeller, etc., 19 A.D.2d 761, 241 N.Y.S.2d 761 [3d Dept. 1963]; leave to appeal denied, 13 N.Y.2d 599, 245 N.Y.S.

2d 1026, 194 N.E.2d 837). In such proceeding relief was denied by the State courts on the ground that plaintiffs were not, contrary to their averment, employees of the State. Ergo, they reason, they must be federal employees, a manifest non sequitur which sidesteps the possibility they may be employees of neither, or in any event, not such federal "employees" as would be entitled to the benefit of federal Civil Service Commission procedures. To like effect and equally without precedential force for the proposition advanced is Washington State Nat. Guard v. Washington State Personnel Bd., 61 Wash.2d 708, 379 P.2d 1002 (1963). The federal government will look to its own courts for a determination of the federal question as to who are and who are not its employees. Pattno v. United States, 311 F.2d 604 (10th Cir. 1962), cert. denied, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 42 (1963); Courtney v. United States, 230 F.2d 112 (2d Cir. 1956), citing 28 U.S.C. §§ 1346 (b) and § 2671; cf. Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L. Ed. 970 (1946); United States v. Standard Oil Co. of California, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947).

cordingly, held that plaintiffs did not meet the traditional conditions of federal employment enunciated in the Federal Personnel Manual, Subchapter S210, p. B–5, that "[t]o be considered a Federal employee, a person must be:

"(1) Engaged in the performance of Federal functions under authority of an Act of Congress or an Executive order; and

"(2) Appointed or employed by a Federal officer in his official capacity as such; and

"(3) Under the supervision and direction of a Federal officer."

Cited as confirmatory of its views, and so found by this Court to be, were Staple-ton v. Macy, 304 F.2d 954 (D.C.Cir. 1962) [7] and 21 Comp.Gen. 305.

Plaintiffs rest their case upon the inadequate prop of a judicial authority which applies under the aegis of the Federal Tort Claims Act and specifically 28 U.S.C. § 2674 [8] the principles of respondeat superior to the government when it is sued for the tortious conduct of its putative employees.

That National Guard caretaker technicians are federal employees to the extent that injury inflicted on third persons by their negligent operation of the equipment they service subjects the United States to liability under the rule of respondeat superior has been,[9] and possibly continues [10] to be, the holding of

7. The Commission's decision continues: "The Court (in Stapleton v. Macy, supra) noted that such criteria have been consistently adhered to by the Commission since their adoption in 1944, despite persistent efforts to change them legislatively; and the Court expressed the opinion that 'these long-established criteria have a *reasonable basis in law* and the findings have *warrant in the record.*'" (Italicized matter double-quoted in original.)

See also Unemployment Compensation Com'n v. Aragan, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946); 19 Comp. Gen. 326; 37 Comp.Gen. 343.

8. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same exent as a private individual under like circumstances, * * *."

§ 1346(b) dealing with jurisdiction of the district courts, rather than with the scope of governmental liability for tort is, nevertheless, in a sense a gloss on chapter 171 to which it refers, for it declares as the predicate for liability that there be a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

It is but a short, but logically inverted, step from the statutory prerequisite of the Tort Claims Act that employment be found to exist before negligence of the employee be considered, to an initial investigation of the circumstances of the al-legedly negligent conduct for the purpose of determining whether the essential fact of employment may be deduced therefrom. A moment's reflection establishes that the concept of liability when thus scrutinized is ambivalent in its thrust. On the one hand, the act is evaluated qua act; on the other, it is integrated with the other circumstances present —and, hence, improperly under the Tort Claims Act—in a resolution of the liminal and precedent question as to whether we have here in any event answerability by a master because it is a servant who has acted.

9. Courtney v. United States, 230 F.2d 112 (2d Cir. 1956), citing with approval, United States v. Holly, 192 F.2d 221 (10th Cir. 1951); Elmo v. United States, 197 F.2d 230 (5th Cir. 1952); United States v. Duncan, 197 F.2d 233 (5th Cir. 1952).

10. The strong dissent of Chief Judge Lumbard (then Circuit Judge) in Courtney finds current support in the Third Circuit State of Maryland v. United States, 329 F.2d 722 (1964) which, denying federal employment, observed that "[w]e have here a classic situation of which there are many examples, in which the Congress has undertaken the financial support of a state activity in the national interest, on condition that the activity conform to the congressional enactments and the regulations promulgated thereunder. The Congress, consistent with the limited power vested in it by Article I, § 8 of the Constitution, supra, has undertaken to subsidize the National Guard units of the respective states,

this circuit. It is true that the Courts, in their exposition of the circumstances upon which they ground a finding of coverage under the Tort Claims Act tend to use broad language which out of context might be held to sustain an employer-employee relationship in all its statutory modalities. But to extend the reach of an opinion rendered in the limited context of a cause of action in negligence so as to bring within the ambit of civil service coverage untold thousands of persons not specifically denominated federal employees by Statute, would without warrant in logic be productive of so significant an impact on the federal economy as to persuade that Congressional intent to effect such result would have been manifested by a clear enactment.

Courtney, finding in the factual context here presented a federal employment of a civilian caretaker within the intent of the Tort Claims Act, prudently marked off a limiting periphery for its holding by commenting that "we know of no rule of law * * * that one cannot be an 'employee' for some and not for other purposes."

It is one thing to rule that employment exists when the statute considered is one under which Congress with liberal intent expressly conceded federal liability on the same terms as would apply were a master sued, with local law controlling, for the act of his servant. It is another matter, however, for a court to find that the status of federal employee exists with respect to persons whose activities merely serve to implement the administration of essentially state functions under federal laws. Congress could have promulgated an employee status for civilian caretakers had it desired, but until it speaks precisely and in overriding fashion, this Court is constrained to recognize as valid and binding the long established holdings of the federal agencies vested with jurisdiction and charged with relevant duties which deny that

on condition that they be organized, maintained, disciplined and equipped in ac-

status to persons circumstanced as are the plaintiffs herein.

Settle order on notice.

cordance with federally prescribed standards."