Charles H. **CHAUDOIN**, Appellant,

v.

Clarence E. **ATKINSON**, Jr.

No. 73–1303.

United States Court of Appeals, Third Circuit.

Argued Oct. 23, 1973.

Final brief submitted Feb. 5, 1974.

Decided April 10, 1974.

OPINION OF THE COURT

BIGGS, Circuit Judge.

The plaintiff-appellant Chaudoin was employed by the Delaware National Guard as a civilian administrative supply technician. The employment of civilian technicians was authorized by the National Guard Technicians Act of 1968, 32 U.S.C. § 709.[1] He was dismissed from his position by Adjutant General Atkinson, effective February 22, 1971.

Sheldon N. Sandler, Bader, Dorsey & Kreshtool, Wilmington, Del., for appellant.

Bruce L. Thall, Asst. U. S. Atty., Wilmington, Del., for appellee.

Before BIGGS, GIBBONS and ROSENN, Circuit Judges.

1. § 709. *Technicians: employment, use, status*—(a) Under regulations prescribed by the Secretary of the Army or the Secretary of the Air Force, as the case may be, and subject to subsection (b) of this section persons may be employed as technicians in—

    (1) the administration and training of the National Guard; and

    (2) the maintenance and repair of supplies issued to the National Guard or the armed forces.

(b) Except as prescribed by the Secretary concerned, a technician employed under subsection (a) shall, while so employed, be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position.

(c) The Secretary concerned shall designate the adjutants general referred to in section 314 of this title, to employ and administer the technicians authorized by this section.

(d) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States. However, a position authorized by this section is outside the competitive service if the technician employed therein is required under subsection (b) to be a member of the National Guard.

(e) Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—

    (1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned;

    (2) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who fails to meet the military security standards established by the Secre-

tary concerned for a member of a reserve component of the armed force under his jurisdiction may be separated from his employment as a technician and concurrently discharged from the National Guard by the adjutant general of the jurisdiction concerned;

    (3) a technician may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned;

    (4) a reduction in force, removal, or an adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation shall be accomplished by the adjutant general of the jurisdiction concerned;

    (5) a right of appeal which may exist with respect to clause (1), (2), (3), or (4) shall not extend beyond the adjutant general of the jurisdiction concerned; and

    (6) a technician shall be notified in writing of the termination of his employment as a technician and such notification shall be given at least thirty days prior to the termination date of such employment.

(f) Sections 2108, 3502, 7511, and 7512 of title 5, United States Code, do not apply to any person employed under this section.

(g)(1) Notwithstanding sections 5544(a) and 6102 of title 5, United States Code, or any other provision of law, the Secretary concerned may, in the case of technicians assigned to perform operational duties at air defense sites—

    (A) prescribe the hours of duties;

    (B) fix the rates of basic compensation; and

    (C) fix the rates of additional compensation;

to reflect unusual tours of duty, irregular additional duty, and work on days that are ordinarily nonworkdays. Additional compensation under this subsection may be fixed on an annual basis and is determined as an appropriate percentage, not in excess of 12 percent, of such part of the rate of basic pay for the position as does not exceed the

He sought review of this dismissal in the United States District Court for the District of Delaware. A motion for summary judgment was filed by General Atkinson and the district court granted it.[2]

The facts are somewhat complicated but are not in dispute.[3] Chaudoin's duties are set out in a detailed job description, a copy of which is attached hereto as an appendix. He was also a member of the Delaware National Guard. On the afternoon of January 19, 1971, Captain Miklasiewicz, who was Chaudoin's immediate supervisor, was directed to assign a detail of three men to participate in a firing squad for a military funeral on Thursday, January 21, 1971. At about 9:00 A.M. on January 20th, Captain Miklasiewicz called Chaudoin and ordered him to participate in the detail. Chaudoin replied that he would go, but about 12:45 P.M. on January 20th, Chaudoin called Captain Miklasiewicz and left a message saying, in substance, that he had reconsidered and would not serve on the burial detail because military funeral duty was unrelated to his job and not contained in his job description. At 3:30 P.M. on that same day, Captain Miklasiewicz called Chaudoin back and Chaudoin told him he had examined his job description and felt firing squad duty was well beyond its scope and therefore he would not have to participate as a member of the firing squad. Captain Miklasiewicz had not before ordered anyone to a firing squad and he testified that he regarded this order as "not a normal duty".

After talking to Chaudoin, Captain Miklasiewicz called his supervisor, Colonel Johnson, who requested him to replace Chaudoin in the detail. Chaudoin's replacement, Evans, had also refused at first to perform the firing squad duty for the same reason given by Chaudoin, but apparently changed his mind when Captain Miklasiewicz indicated he might be dismissed if he did not perform the duty.

Chaudoin, however, reported for duty on the morning of January 21. He was in uniform and ready to perform his duties as a member of the firing squad. At that time, Captain Miklasiewicz had a meeting with the group of men comprising the firing squad, including Chaudoin. Chaudoin advised Captain Miklasiewicz that he had decided to file a grievance rather than refuse to perform the firing squad duty if the order were put in writing so there would be written documentation upon which to base a grievance. Captain Miklasiewicz was willing to put the order in writing and indicated he would speak with Colonel Johnson. When he did so, Colonel Johnson instructed him that Chaudoin had been replaced and should not be per-

---

minimum rate of basic pay for GS–10 of the General Schedule under section 5332 of title 5, United States Code.

(2) Notwithstanding sections 5544(a) and 6102 of title 5, United States Code, or any other provision of law, the Secretary concerned may, for technicians other than those described in clause (1) of this subsection, prescribe the hours of duty for technicians. Notwithstanding sections 5542 and 5543 of title 5, United States Code, or any other provision of law, such technicians shall be granted an amount of compensatory time off from their scheduled tour of duty equal to the amount of any time spent by them in irregular or overtime work, and shall not be entitled to compensation for such work.

\*　　\*　　\*　　\*　　\*

As amended Sept. 13, 1961, Pub.L. 87–224, § 2, 75 Stat. 496; Aug. 13, 1968, Pub.L.

90–486, § 2(1), 82 Stat. 755; Aug. 13, 1971, Pub.L. 92–119, § 2, 85 Stat. 340.

2. It was stipulated at the trial that the case should be treated as if a motion for summary judgment had also been filed by Chaudoin. See stipulation of January 9, 1974 in this court.

3. All oral evidence in the case is contained in the transcript of "The Technician Hearing, Delaware Armory, National Guard, compiled by the Technician Hearing Committee," Item Docket No. 15. This consists of 286 pages of transcript and some pages of printed and typewritten exhibits. These exhibits, certified in the supplementary record from the district court to the Clerk of this court were in effect on January 20, 1971, and differ in no very material respect from those which were before the learned district judge. All other evidence is documentary.

mitted to participate in the detail. After this incident, Captain Miklasiewicz wrote a report to the Adjutant General and recommended that Chaudoin be given an official written reprimand and be placed on three days' leave without pay for insubordination. Colonel Johnson acquiesced in the recommendation, differing only in that he felt the punishment should be designated a "minimum" rather than a "maximum." Nonetheless on January 22, 1971, Adjutant General Atkinson notified Chaudoin that his employment was being terminated as a result of his "failure to obey a lawful order to report for duty as a member of a Firing Squad at a military funeral."

It was suggested that Chaudoin talk to Adjutant General Atkinson in person and he did so, hand-carrying a two and one-half page explanation of the incident. At the meeting, General Atkinson, according to Chaudoin's testimony, told Chaudoin that he did not need people like him in the National Guard and that he was a disgrace to the Army. Subsequently Atkinson confirmed Chaudoin's dismissal and Chaudoin requested a hearing as provided by the National Guard Regulations. A Technician Hearing Committee was convened and made its recommendation to Adjutant General Atkinson.[4] The committee found the General's order was lawful but also agreed that the penalty of dismissal was excessive and ignored "the principle of like penalties for like offenses". See ¶ 7–37 of National Guard Regulation No. 51, "Like penalties for like offenses." The committee decided that Chaudoin "was treated with undue severity" and recommended that he be restored to the position he held prior to the action of

the Adjutant General and "receive retroactive status and other accumulated credits to the effective date of his removal; except that the retroactive pay and credits would not include the pay for three days as recommended by his immediate supervisor."

Following this extensive hearing, General Atkinson ignored the recommendation of the committee and without specifying any reason affirmed his original decision to terminate Chaudoin's employment. The complaint requests that the court order Chaudoin's reinstatement, and that he be awarded compensation and damages in the amount of $25,000, attorney fees, interest and costs.

## I.

### JURISDICTION

A. Chaudoin asserts that jurisdiction is conferred upon the district court by 28 U.S.C. § 1331, 5 U.S.C. § 702 et seq., and 28 U.S.C. § 1361. We consider these assertions seriatim.

As we have said, 32 U.S.C. § 709 is statutory authority for the hiring of civilian technicians such as Chaudoin for the National Guard. See note 1, *supra*. Under this provision a technician is deemed to be a federal employee and the adjutant general is charged with employing and administering the technicians authorized by the Act.

Chaudoin's employment was pursuant to this statute and he asserts his employment was terminated in violation of due process; therefore, if the jurisdictional amount is present as required by 28 U.S.C. § 1331(b), the district court had jurisdiction of the subject matter of the suit under that section.[5]

---

4. The Hearing Committee did not consist of technicians or those in like position to Chaudoin, but consisted of the following: Colonel Donald S. Robinson, Chairman; Captain William F. Rhoads, Member; Master Sergeant Robert .H. Field, Member; Lieutenant Colonel John F. Shearer, Jr., Observer for Management; and Major Donald L. Emerson, Administrative Assistant to the Committee.

5. The court *sua sponte* requested counsel to brief the question not raised in the District Court, as to whether 32 U.S.C. § 709, providing in pertinent part "(e) Notwithstanding any other provision of law . . . (5) a right of appeal which may exist with respect to clause (1), (2), (3), or (4) *shall not extend beyond the adjutant general of the jurisdiction concerned;* . . . " prohibits judicial review. (Emphasis added.) Both par-

Chaudoin's discharge was effective February 22, 1971, and his suit was filed August 3, 1971. He cannot claim $10,000 worth of damage for his salary for that period, but it is obvious that the extent of damages resulting from his discharge from his secured position with status as a qualified civilian national guard technician and the gain over the years which he might anticipate from continued employment at an annual salary paid by the United States in the amount of $7985, despite his receipt of an annual salary in his new position of approximately $4000 a year, might well exceed $10,000 exclusive of interest and costs.

It is clear, as the learned district judge points out in his opinion: "A fair reading of the complaint indicates that the plaintiff claims at least three matters were at issue on that date: (1) the plaintiff's right to compensatory damage for the economic injury which had theretofore accrued as a result of the discharge, (2) plaintiff's right to employment as a technician in the future, (3) plaintiff's right to punitive damages." Item (3) is not supported by the formal pleadings, but nonetheless was clearly before the court and was referred to in the briefs of the parties and in the opinion of the district court. The amount of the *ad damnum* sought was $25,000. The actions of General Atkinson were such as possibly might bring him within the ambit of punitive or exemplary damages. Certainly the record here does not negative such a possibility, but as to this issue we presently express no opinion. See Rule 54(c), Fed.R.Civ. P.[6]

General Atkinson, misunderstands Chaudoin's status. Chaudoin had attained permanent tenured status and pension rights at the time he was dismissed. He could only be discharged "for cause" and he was not employed on a year-to-year contract basis. General Atkinson seems to insist that the only damage suffered by Chaudoin was the loss of one year's salary, but this is an erroneous conception. *See, e. g.,* Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). We hold that the court has jurisdiction under 28 U.S.C. § 1331.

■ B. (1) Chaudoin alleges *inter alia* that jurisdiction to review General Atkinson's order rests in Section 10 of the Administrative Procedure Act, 5 U. S.C. § 702 et seq.[7] This issue need not detain us long since it is disposed of by the decision of this court in Zimmerman v. United States Government, 422 F.2d 326, 330–332 (3 Cir.), cert. denied 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970). *Cf.* Charlton v. United States, 412 F.2d 390 (3 Cir. 1969) and concurring opinion of Judge Stahl at 395, et seq. Despite appellant's contention that subsequent Supreme Court decisions have undermined *Zimmerman,* it appears that the Court has not yet settled the issue of whether the APA provides an independent basis of jurisdiction. *See, e. g.,* Aguago v. Richardson, 473 F.2d 1090

ties filed extensive briefs. General Atkinson relies on Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), a decision we deem inapplicable here. An examination of legislative history and of similar statutes and of the case law convinces us that the phrase italicized above was intended by Congress to limit the extent of administrative appeals but was not designed to prevent granting to a person in the position of Chaudoin judicial relief.

6. See our decision in Davis v. Romney, 490 F.2d 1360, filed January 14, 1974: "Rule 54 of the Federal Rules of Civil Procedure states that, except in the case of default judgments, 'every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.' * * * The provision of Rule 54 is applicable to summary, as well as other, judgments. J. Moore, 6 Moore's Federal Practice 54.62 (1969)."

7. 5 U.S.C. § 702 provides as follows: *"Right of Review*—A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 392." (Carried over without significant change from 60 Stat. 243, June 11, 1946).

(2d Cir. 1973). Jurisdiction cannot be sustained under the Administrative Procedure Act.

(2) Jurisdiction under 28 U.S.C. § 1361 to require his reinstatement is available. 28 U.S.C. § 1361 provides: "*Action to compel an officer of the United States to perform his duty*—The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." We are of the view that General Atkinson, since he has not been called into active service, cannot properly be described as an officer of the United States. See Washington State Nat. G. v. Washington State Per. Bd., (*court en banc*), 61 Wash.2d 708, 379 P.2d 1002 (1963); United States v. Holly, 192 F. 2d 221 (10 Cir. 1951); and Williams v. United States, 189 F.2d 607 (10 Cir. 1951). Cf. O'Toole v. United States, 206 F.2d 912 (3 Cir. 1953). However, 32 U. S.C. § 709 charges the adjutant generals with employment and administration of the civilian technicians who are federal employees.

In view of the foregoing there can be no doubt that the Adjutant General of Delaware is an agency or an agent of the United States and therefore within the purview of § 1361. The question remains, however, do the courts of the United States have the power to grant to Chaudoin the mandatory relief that he seeks? The answer is "yes."

Judge VanDusen in his opinion in Davis v. Shultz, 453 F.2d 497, 502 (3 Cir. 1972), stated the following: "Plaintiff's claim of jurisdiction based upon 28 U.S.C. § 1361 to consider the claim for mandamus relief was properly dismissed by the district court. Section 1361 grants original jurisdiction to district courts to consider 'actions in the nature of mandamus' directed against officers and employees of the Federal Government.[20] The question of the proper scope of an 'action in the nature of mandamus' under § 1361 has been the subject of varying interpretations. The majority of the Circuit Courts of Appeals which have considered this question have adopted the position of former Chief Judge Hastie of this Circuit, speaking for the First Circuit, in Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965).[21] This position is that § 1361 and its accompanying venue amendments were designed to eliminate obstacles to bringing mandamus actions outside of the District of Columbia and were not meant to alter the traditionally limited nature of the writ. Under this view, mandamus will lie only to compel the performance of a plain duty and will not lie to compel the discharge of an action committed to discretion.[22] In the instant action, plaintiff seeks to compel Secretary Shultz to perform an act which has been committed to his discretion, i. e., the naming of a prime sponsor. Under the majority view, mandamus will not lie.

"The majority view is that in certain limited cases a § 1361 action may be used to compel the performance of an act committed to discretion. As the District of Columbia Circuit stated in Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561 (1970), jurisdiction can be based on § 1361 to ' . . . issue appropriate corrective orders where Federal officials are not acting within the zone of their permissible discretion but are abusing their discretion or otherwise acting contrary to law. . . .'."

The footnotes are as follows:

"20. Section 1361 was part of a 1962 amendment to Title 28 which enlarged the jurisdiction of the district courts and liberalized the venue requirements. Prior to these amendments, it was impossible to bring a mandamus action against a federal official in any district other than the District of Columbia. *See generally* Byse & Fiocca. Section 1361 of the Mandamus

and Venue Act of 1962 and 'Nonstatutory' Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308 (1967).

"21. Jarrett v. Resor, 426 F.2d 213 (9th Cir. 1970); Carter v. Seamens, 411 F.2d 767 (5th Cir. 1969); Rural Electrification Admin. v. Northern States Power Co., 373 F.2d 686 (8th Cir. 1967); Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F. 2d 364 (10th Cir. 1966).

"22. Ashe v. McNamara, 355 F.2d 277, 282 (1st Cir. 1965)."

The Second Circuit Court of Appeals has applied the same doctrine in Leonhard v. Mitchell, 473 F.2d 709, 712 (1973), stating: "Our sole task on this appeal is to gauge the scope of authority granted to district courts under 28 U.S. C. § 1361. This section, enacted in 1962, provides that 'The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.' Traditional teaching views a writ of mandamus as appropriate solely 'to compel officials to comply with the law when no judgment [or discretion] is involved in that compliance.' Note, Developments in the Law: Remedies Against the United States and its Officials, 70 Harv.L.Rev. 827, 849 (1957). Thus, a writ of mandamus properly is issued when a government official fails to comply with a specific statutory or regulatory direction. See, e. g., Feliciano v. Laird, 426 F.2d 424 (2d Cir. 1970) (Army failed to process application for hardship discharge in accordance with regulations). Additionally, decisions construing § 1361 have held that 'official conduct may have gone so far beyond ány rational exercise of discretion as to call for mandamus even when the action is within the letter of the authority granted.' United States ex rel. Schonbrun v. Commanding Officer, Armed Forces, 403 F.2d 371, 374 (2d

Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969). See Casarino v. United States, 431 F.2d 775 (2d Cir. 1970); Safir v. Gibson, 417 F. 2d 972 (2d Cir. 1969), cert. denied, 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970); Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965). Accordingly, a request for relief under § 1361 requires 'the court [to] utilize all relevant legislative and other materials to determine the scope of discretion or power delegated to the officer.'" See also Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers, 414 U.S. 453, 465, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) (Mr. Justice Brennan, concurring); Carey v. Local Board No. 2, Hartford, Connecticut, 297 F.Supp. 252 (D.C.1969).

■ We conclude, therefore, that if Chaudoin has made a case for mandatory relief it can be granted him under 28 U.S.C. § 1361.

## II.

## ADDITIONAL RELEVANT FACTS AND CONCLUSIONS

(A) We will first consider General Atkinson's dismissal of Chaudoin as an abuse of discretion.

32 U.S.C. § 709(e)(3) provides "a technician may, at any time, be separated from his technician employment for cause by the adjutant general of the jurisdiction concerned. . . . " Section 7–39(d) of National Guard Regulation 51 defines "cause" as follows: "A 'cause' for an adverse action is a recognizable offense against the employer-employee relationship. What constitutes a proper cause, therefore, may run the entire gamut of such offenses, including inadequate performance of duties and improper conduct on or off the job. In addition, every adverse action must be for such cause 'as will promote the efficiency of the service'."

The district court examined these provisions and stated that it could not conclude "that a reasonable employer could not determine that the employee's refus-

al was an 'offense against the employee-employer relationship' and that 'adverse action' would 'promote the efficiency of the service.'" We disagree.

■ Paragraph 7–36 of National Guard Regulation 51 provides: "Reasonableness: In determining the action to be proposed or taken, it should be established whether the technician knew or could reasonably be expected to know what standards of conduct were expected of him." Paragraph 7–37. "Like Penalties for Like Offenses," states: "The State adjutant general should establish tables of penalties for delinquency or misconduct which should be used as a guide in imposing disciplinary action to assure like penalties." At the end of Sheet 7.7 of these regulations the following appears: "The following table of penalties for delinquency or misconduct will be used as a general guide in imposing disciplinary action to assure like penalties for like offenses. The list of offenses and suggested penalties set forth below may not successfully meet the demands of all situations and therefore is to be considered as suggestive only. Final decision as to the action to be taken will rest with the State adjutant general. When imposing progressive penalties for a second or third offense, consideration should be given to whether a reasonable period has elapsed since the prior offense." The table of offenses states: "Offense. 1. Insubordination (refusal to obey orders, impertinence, like offense). Penalties. First offense. Official written reprimand or 1-day suspension. Second offense. 2- to 5-day suspension. Third offense. 6- to 10-day suspension, or removal."

Insofar as the record shows, Chaudoin had a spotless record, and did in fact change his mind and appear for the funeral, properly dressed and equipped and offered to participate. As we have said, his supervisor, Captain Miklasiewicz wrote a report to the Adjutant General and recommended that Chaudoin be given an official written reprimand and three days leave without pay for insubordination. Colonel Johnson, Captain Miklasiewicz's superior, acquiesced in this recommendation, only differing in that the punishment should be designated as a "minimum" rather than as a "maximum".

There seems to be no reasonableness to General Atkinson's action. It would appear that General Atkinson had his standards mixed for in this instance he was to judge Chaudoin as a technician and not as a member of the National Guard.

We conclude, therefore, in view of the foregoing, that General Atkinson has abused his discretion in discharging Chaudoin. He disregarded the penalty guidelines suggested by the regulations, the opinions of Chaudoin's immediate supervisors, and the findings of the Technician Hearing Committee without any statement of his reasons for doing so.

■ (B) The lawfulness of General Atkinson's order should next be considered. Before 1968, the 1956 statute, 70A Stat. 615 (32 U.S.C. § 709) provided for the hiring of civilian "competent persons to care for material, armament, and equipment of the Army National Guard. . . . A caretaker employed under this subsection may also perform clerical duties incidental to his employment *and other duties that do not interfere with the performance of his duties as caretaker.*" (Emphasis added). The statute as amended in 1968 replaced the italicized language with the following: "[P]ersons may be employed as technicians . . . in the maintenance and repair of supplies issued to the National Guard or the armed forces." 32 U.S.C. § 709(a)(2). Prior to the 1968 amendment the National Guard technicians were not in too favorable a position and apparently they agitated for improvement of their status.[8] It would appear that one of the issues that the technicians were complaining about was extra duties imposed on them from time to

8. *See* 1968 U.S.Code, Cong. and Admin.News, p. 3318.

time such as funeral details or other duties unrelated to their primary duties.[9, 10]

The job description in effect as of the date of Chaudoin's alleged offense, *viz.*, January 20, 1971, still contained the provision under "C. *Principal Duties*" that the technician "Performs other duties as assigned." The language omitted from the statute in the 1968 amendment may or may not require revision of the job description quoted above, but it is clear that a technician is not required to perform duties unrelated to his primary employment since the explicit authorization of such unrelated duties was eliminated. There is no way, therefore, that General Atkinson's order can be considered a "lawful" order.

Our position in this respect is fortified by the fact that although the Job Description contains the statement that the technician "Performs other duties as assigned", the regulations refer to "Excused Absences". Paragraph 6–43 of National Guard Regulation 51 states in part: "Absences from duty administratively authorized which do not result in a charge to any kind of leave or in loss of salary are excused absences. * * * *d.* For up to 4 hours in any one day to participate as active pall bearers or as members of firing squads in funeral ceremonies for members of the Armed Forces." There would be no need for any excused absences provisions if funeral detail duty was included in the job description. The language of the "Excused Absences" clause indicates that a technician could volunteer for an otherwise off-duty activity without a loss in pay. It is clear, of course, that the 1965 Regulations were issued under the old unamended version of § 709 which had clearly allowed such unrelated activities.

We conclude that on the grounds stated General Atkinson's order was not a lawful order. It was therefore null and void, *ab initio* and without legal effect,

and General Atkinson can base no defense upon it.

### III.

### DISPOSITION.

The judgment will be reversed and the cause remanded with directions to the district court to enter a judgment against General Atkinson, to grant the injunctive and mandatory relief sought by Chaudoin, and to award him damages in such amount or amounts as justice may require.

### APPENDIX.

### DEPARTMENTS OF THE ARMY AND THE AIR FORCE NATIONAL GUARD BUREAU

### TECHNICIAN POSITION DESCRIPTION

1. Date   1 Nov 67
2. Component   ARNG
3. Job Number   216 71 03
4. Appointment Requirements
   X Excepted Service
      ☐ Off   X Wo   X Enl
   ☐ Competitive Service (*non-Guard*)
5. Number of Jobs Covered by Position Description
6. Official Title

### ADMINISTRATIVE-SUPPLY TECHNICIAN

7. Pay Plan   GS
8. OCC Code   0301
9. Grade   06
10. Working Title

### ADMINISTRATIVE-SUPPLY TECHNICIAN

I. Occupational Requirements: Incumbent is Subject to Uncommon Tours of Duty, Rotational Shift Assignments and Overtime Duty, for Which Compensatory time Off will be Granted. May Be Required to Fly in Military or Commercial Aircraft for TDY Purposes.

---

9. This was conceded at argument before this court by counsel for General Atkinson. *See also* 1968 U.S.Code, Cong. and Admin.News, *supra.*

10. *See* Lasher v. Shafer, 460 F.2d 343, 347, et seq. (3d Cir. 1972), citing Maryland for use of Levin v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965).

II. The Following Duties, Responsibilities, and Qualification Requirements Constitute Minimum Requirements for Support of This Job:

## A. WORK RELATIONSHIPS:

1. Works under the general supervision of the Unit Commander who designates areas of responsibility and establishes policies and procedures for the unit. Staff supervision is exercised by Staff Administrative Assistant who provides instruction on command policies and procedures, interpretation of regulations; checks work for adequacy and compliance with regulations through periodic visits and inspections; and reviews completed work (correspondence, reports, etc.) routed through headquarters. Accomplishes day-to-day assignments independently in accordance with established policies and procedures.

2. When a lower grade Administrative-Supply Technician is assigned to the unit, incumbent assigns and checks his work and determines proper work methods and procedures to be employed.

## B. SCOPE:

Is responsible to the Unit Commander for carrying out the Commander's plans for the accomplishment of administrative, clerical and supply functions of the unit. Performs unit functions which cannot be accomplished by assigned unit personnel during regularly scheduled training periods. Instructs unit personnel in administrative and supply procedures.

## C. PRINCIPAL DUTIES:

1. Assists Unit Commander and his staff in planning and directing the overall administrative, clerical, and supply functions of the unit. Assures that administrative plans, policies and procedures established by commander and higher authority are carried out. Makes recommendations on administrative, clerical, and supply functions. Contacts higher headquarters to secure interpretation of regulations or policies pertinent to unusual or controversial actions. Reviews work completed by unit personnel to assure compliance with regulations and approved policies and procedures; brings deficiencies to attention of responsible personnel and instructs in correct procedures.

2. Instructs and assists unit personnel in performance of administrative, clerical and supply functions to include preparation and processing of personnel actions, maintenance of personnel records and files; preparation and processing of supply actions and maintenance of related files and records; preparation of training schedules; compilation of recurring and one-time reports related to functions of unit. Reviews work in process and upon completion for compliance with regulations, policies, and procedures. Identifies and interprets regulations; prepares and furnishes sample forms; gives on-the-job instruction.

3. Completes work not accomplished during unit training assemblies and which cannot be held for the next assembly. This includes preparation editing, and typing of personnel actions; supply requisitions or turn-ins; payrolls; attendance reports; training schedules, requisitioning training aids; posting actions to personnel records and supply records; filing; compilation of recurring and one-time reports related to administrative, personnel, or supply functions.

4. Reviews incoming correspondence, determines required action and makes distribution to personnel or sections concerned. Composes and types replies to inquiries pertaining to assigned functions. Follows up on suspense correspondence to insure compliance with suspense dates. Answers a variety of telephone, correspondence, or personal inquiries pertaining to the ARNG program. Interviews persons interested in assignment, appointment, or transfer to unit; advises on ARNG programs, obligations, advantages, unit vacancies, MOS requirements, etc. Advises on

**1334**

procedures for enlistment or transfer to unit; assists on completing forms, arranges for interview with unit commander or appropriate member of his staff, administers tests, makes arrangements for physical examinations, etc. Answers questions on MOS requirements; eligibility for promotion, transfer, discharge, etc.

5. Receives, inspects, signs for, and warehouses incoming supplies. Inspects material to be turned in; secures technical inspections as appropriate; prepares or edits turn-in slips; determines need for and prepares or reviews Reports of Survey. Assists in or takes periodic inventories. Drives unit vehicles to pick-up or deliver supplies as required.

6. Maintains unit library. Reads incoming publications, briefs Unit Commander on important changes, routes to personnel concerned for information and/or action. Initiates requisitions for publications and blank forms.

·Performs other duties as assigned.

D. QUALIFICATIONS REQUIRED:

Normally at least eighteen months of progressively responsible experience which demonstrates ability to perform administrative and supply work, and ability to operate all types of military vehicles are required.

E. MILITARY ASSIGNMENT AND TRAINING:

1. *Area of Assignment:* Incumbent must occupy a TOE position comparable to his technician assignment.

2. *Qualification:* Incumbent is required to qualify as Unit Personnel Technician, MOS Code 711A, and/or Unit Supply Technician, MOS Code 761A, or as Personnel Specialist, MOS Code 71H, Administrative Specialist, MOS Code 71L, and/or Armorer/Unit Supply Specialist, MOS Code 76Y.

3. *Required Training:* Incumbent is required to attend as appropriate MOS course or complete equivalent Army extension courses.